

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| NOORALI SAM SAVANI, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 1:06-2805-HFF |
| | § | |
| WASHINGTON SAFETY MANAGEMENT | § | |
| SOLUTIONS LLC, et. al. | § | |
| Defendants. | § | |

## ORDER

## I.    INTRODUCTION

This is a case under the Employment Retirement Income Security Act (ERISA).  The Court

has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and other relevant statutes.  Currently

pending before the Court are the parties cross motions for summary judgment.  One of the issues

presented in those motions is whether Defendants violated ERISA's anti-cutback rule in amending

the Westinghouse Safety Management Solutions, LLC Pension Plan (the Plan) to delete a $700

monthly supplement benefit.  If the amendment does not violate the anti-cutback rule, then the Court

must also decide whether Defendants abused their discretion in denying Plaintiff's claim for

benefits.  Having carefully considered the motions, the responses, the replies, the record, and the

applicable law, the Court will grant in part and deny in part Defendants' motion for summary

judgment and will deny Plaintiff's motion for summary judgment.

**II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*A. Relevant Plan Provisions*

Plaintiff, Noorali "Sam" Savani, was employed at the Savannah River Site (SRS), with Westinghouse Savannah River Company, now Washington Savannah River Company (WSRC) from March 1990 until 1997. In 1997, Plaintiff was hired by a newly formed entity, Washington Safety Management Solutions (WSMS), where he worked until his retirement in April 2005. Both WSRC and WSMS are wholly owned subsidiaries of Washington Group International (WGI). As an employee of WSMS, Plaintiff participated in its employer-sponsored pension benefit plan, the WSMS Pension Plan (the Plan).

The WSMS Pension Plan, prior to amendments, provided in relevant part:

Article 1. Definitions

1.01    "Accrued Benefit" means, as of any date of determination, the normal retirement Pension computed under Section 4.01(b) on the basis of the Member's Average Monthly Pay, Primary Social Security Benefit and Credited Service as of that date taking into account any reductions that might be applicable in case of payment before his Normal Retirement Age, less the WSRC Plan offset as described in Section 4.13, plus any applicable supplements as described in Section 4.12 . . . .

. . .

Article 4. Eligibility for and Amount of Benefits

. . .

4.3    Early Retirement

. . .

(b)    The early retirement Pension shall be a deferred Pension beginning on the first day following the Member's Normal Retirement Date and, subject to the provisions of Section 5.01, shall be equal to his Accrued Benefit. However, the Member may elect to receive an early retirement Pension beginning before his Normal Retirement Date. In that case, the Member's Pension shall be equal to the deferred Pension multiplied by the applicable percentage factor from the following early retirement table: [omitted]

. . . .

2

4.12    Supplemental Benefits

(a)    If a Member who:

(i)    otherwise satisfies the requirements for a Pension under this Plan; and

(ii)    has at least one year of service with WSMS; and

(iii)    transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and

(iv)    retires before his Normal Retirement Age from active service on or after October 1, 1998,

he shall be entitled to a monthly supplement (which shall commence with the first Pension payment made under the Plan on account of such retirement and the last payment shall be in the month preceding the Member's attainment of Normal Retirement Age) equal to the following:

| Effective Date | Monthly Supplement |
| --- | --- |
| October 1, 1998 | $525 |
| January 1, 1999 | $550 |
| January 1, 2000 | $575 |
| January 1, 2001 | $600 |
| January 1, 2002 | $625 |
| January 1, 2003 | $650 |
| January 1, 2004 | $675 |
| January 1, 2005 and Thereafter | $700 |

(b)    If a Member who:

(i)    otherwise satisfies the requirements for a Pension under this Plan;

(ii)    has at least one year of service with WSMS; and

(iii)    transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and

(iv)    either retires from active service on or after October 1, 1998 or dies on or after October 1, 1998 and immediately prior to his death would be entitled to or is receiving an early retirement Pension under the Plan,

he shall be entitled to a $200 monthly supplement commencing at his attainment of Normal Retirement Age, which shall continue after such Member's death to such Member's spouse, if then living, for such spouse's lifetime.

Each Member, who is vested in his Accrued Benefit, that would otherwise meet the requirements of Section 4.12(b)(i) through (iii), but who terminates his employment prior to being eligible for an early retirement Pension under the Plan, shall be entitled to receive a fraction of the above $200 monthly supplement with commencement at the Member's attainment of Normal retirement Age . . .

. . . .

Article 7.  Administration of Plan

7.02    Duties of Benefits Committee

. . . .

(b)    The Benefits Committee shall have all powers necessary to discharge its duties, including, but not limited to, the following powers:

(i)    To approve Plan amendments that:

(A)    Are required by ERISA and all other applicable governmental regulations for Plan qualification,

(B)    Do not materially increase costs to the Plan, or

(C)    Clarify ambiguous or unclear Plan provisions,

. . . .

7.06    Establishment of Rules

Subject to the limitations of the Plan, the Benefits Committee from time to time shall establish rules for the administration of the Plan and the transaction of its business.  The Benefits Committee shall have total and complete discretion to interpret the Plan; including, but not limited to, the discretion to (a) determine all questions arising in the administration, interpretation and application of the Plan including the power to construe and interpret the Plan; (b) decide all questions relating to an individual's eligibility to participate in the Plan and/or eligibility for benefits and the amounts thereof; (c) decide all facts relevant to the determination of eligibility for benefits or participation

. . . .

7.15    Erroneous Payments

In the event that a Member (or his beneficiary) receives a distribution under this Plan in excess of the amount, if any, to which he is entitled, by reason of a calculation error or otherwise, the Benefits Committee, in their sole and absolute discretion, may adjust future benefit payments to the Member (or his beneficiary) to the extent necessary to recoup the amount which the Member (or his beneficiary) received which was in excess of the amount to which he was entitled under the term [sic] of the Plan.  If the Benefits Committee determines, in their sole and absolute discretion, that it is not feasible or desirable to adjust future benefit payments to the Member, the Benefits

Committee may require the Member (or his beneficiary) to repay to the Plan the amount which is in excess of the amount to which the Member (or his beneficiary) is entitled under the terms of the Plan. All amounts received by the Member (or his beneficiary) under the Plan shall be deemed to be paid subject to this condition. The determination of the Benefits Committee made pursuant to this Section 7.15 shall be conclusive, final and binding on all parties, subject to the claims procedures under Section 7.16, and shall not be overturned unless such determinations are arbitrary and capricious.

. . . .

Article 10. Amendment, Merger and Termination

10.01 Amendment of Plan

The Board of Directors, by action taken at a meeting held either in person or by telephone or by other electronic means, or by unanimous consent in lieu of meeting, reserves the right at any time and from time to time, and retroactively if deemed necessary or appropriate, to amend in whole or in part any or all of the provisions of the Plan. However, no amendment shall make it possible for any part of the funds of the Plan to be used for, or diverted to, purposes other than for the exclusive benefit of persons entitled to benefits under the Plan, before the satisfaction of all liabilities with respect to them. No amendment shall be made which has the effect of decreasing either directly or indirectly the Accrued Benefit of any Member, of eliminating any benefit option, or of reducing the nonforfeitable percentage of the Accrued Benefit of a Member computed under the Plan as in effect on the date on which the amendment is adopted or, if later, the date on which the amendment becomes effective . . . Pensions granted pursuant to this Plan to former Employees who were retired or otherwise terminated prior to any such change may not be reduced, canceled or suspended, except as provided under Sections 3.03 [dealing with rehired employees] and 10.04 [dealing with non-duplication of benefits].

(A.R. App'x 22-98.)

On December 28, 2004, the Benefits Committee[1] amended the Plan to eliminate from Section 4.12 the $700 monthly supplemental benefit to members of the Plan.[2] This action was not immediately communicated to Plan participants and beneficiaries. Plaintiff retired from WSMS on or about April 30, 2005. On July 29, 2005, WSMS mailed letters to those who retired in 2005 (or were eligible to do so) and to those who had transferred from WSRC, stating that the supplemental benefits were eliminated.

On December 15, 2005, the Board of Directors of WSMS resolved by unanimous written consent to amend the pension plan. (A.R. App'x 160.) According to the Board, the purpose of this amendment was to freeze benefit accruals and make other clarifications and changes. (A.R. App'x 145.)

On or about June 8, 2006, Plaintiff received a letter from Ted A. Myers, Director of Human Resources, stating that the WSMS operating fund had been paying the $700 per month supplemental benefit and that Plaintiff had correctly received the supplemental benefit from May 2005 through August 2005, but incorrectly received the $700 per month thereafter. (A.R. App'x 16.) The letter explained that there had been thirteen months of incorrect payments, resulting in an overpayment of $9,100. The letter further requested that Plaintiff pay back the $9,100.

---

[1]As of January 1, 2006, the "Benefits Committee" became known as the "Administrative Committee." Throughout the Order, use of the term "Benefits Committee," "Administrative Committee," or simply the "Committee," refers to the same entity.

[2]Throughout the Order, the Court will refer to the supplement originally included in § 4.12(a) as the "$700 monthly supplement." In actuality, the § 4.12(a) supplement was only $700 per month for those retirees who retired in 2005 or later. As noted in the preceding chart, the supplement was less for those who retired prior to 2005.

On September 26, 2006, Plaintiff filed a putative Class Action Complaint and various motions in the Court of Common Pleas for Aiken County, South Carolina. Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of complete preemption of Plaintiff's state law claims by ERISA. Plaintiff subsequently filed a First Amended Class Action Complaint (Amended Complaint).

On September 17, 2007, in response to numerous motions filed by various parties, the Court granted Defendants' motion to dismiss Plaintiff's class action complaint. As to Count One, a claim for benefits under ERISA, the Court held that Plaintiff had failed to exhaust his administrative remedies. As to Count Two, a claim for breach of fiduciary duty under ERISA, the Court held that under controlling Fourth Circuit precedent such a claim could not be asserted along with a claim for benefits. The Court found Counts Three and Four, breach of contract and breach of fiduciary duty claims, to be preempted by ERISA.

Plaintiff next proceeded to exhaust his administrative remedies as to Count One. The Administrative Committee denied Plaintiff's request for benefits on February 14, 2008, and Plaintiff appealed. (A.R. App'x 176-182.) In response, in a letter dated June 27, 2008, the Committee dismissed Plaintiff's appeal and upheld the denial of benefits. (A.R. App'x 486-499.) In the letter, the Committee first asserted that it had the authority to amend the Plan and terminate the $700 monthly supplement under §§ 7.01 and 7.02 of the Plan because the amendment did not materially increase costs to the Plan and was required by ERISA because, if the supplement continued, the Plan could fail discrimination testing. (A.R. App'x 489-90.) The Committee also rejected Plaintiff's argument that the $700 supplement was an "accrued benefit" under the Plan and, thus, not subject to termination. (A.R. App'x 490-494.)

On July 18, 2008, the Court reopened the case at Plaintiff's request when he demonstrated that he had exhausted his administrative remedies. However, the case was reopened only as to Count One, which the Court previously construed as a claim for benefits under ERISA. On July 25, 2008, Plaintiff filed an Amended Complaint as to Count One, alleging that the Administrative Committee lacked the authority to amend the Plan in December 2004, that the amendment violated ERISA's anti-cutback rule, and that, in denying Plaintiff's claim for benefits, the Committee breached its fiduciary duty and was operating under a conflict of interest. On September 11, 2008, the WSMS entity Defendants filed a counterclaim seeking to recover the $9,100 in benefits erroneously paid to Plaintiff after the supplement was terminated.

In late 2008, the parties filed motions for summary judgment as to the ERISA claim. On May 29, 2009, upon reviewing the motions, the Court instructed the parties to refile the motions as cross motions for judgment and to also file a joint stipulation in accordance with the Court's preferences for ERISA-benefits cases. As part of that stipulation, the Court asked the parties to specifically address whether Plaintiff was still pursuing his claims as a putative class action because the Court's September 17, 2007 Order dismissed without prejudice Plaintiff's motion for class certification.

On June 12, 2009, the parties filed the joint stipulation as requested along with cross motions for summary judgment. Additionally, Plaintiff filed a renewed motion for class certification. The parties filed responses and replies to the motions in July. On August 5, 2009, the Court ordered the parties to engage in mediation in an effort to resolve this dispute. Those efforts were unsuccessful.

Most recently, upon carefully examining the parties various filings, on February 18, 2010, the Court ordered the parties to respond to several special interrogatories related to the Committee's authority to amend the Plan, Plaintiff's estoppel-type claim, and Defendants' counterclaim.

## III.  DISCUSSION AND ANALYSIS

### A.  *Issues before the Court*

As is evident from the procedural history of this case, the course of this litigation has been long and confusing.  In fact, before addressing the pending motions, the Court must first determine precisely what issues are before it.

The last time this Court issued a major order in this case was on September 17, 2007.  In that Order, which actually closed the case, the Court dismissed all four counts of Plaintiff's Amended Complaint.  Counts two through four were found to be either preempted by ERISA or sufficiently addressed through Count One, which the Court construed as an ERISA § 502(a)(1)(B) claim.[3]  As noted above, on July 18, 2008, the Court reopened the case as to Count One of the Amended Complaint because Plaintiff had exhausted his administrative remedies.  That Order also instructed Plaintiff to file an Amended Complaint as to Count One.  Therefore, the only claim before the Court

---

[3]Plaintiff failed to cite § 502(a)(1)(B) in his Amended Complaint, but the Court construed that count as a 502(a)(1)(B) claim as explained in footnote three:

> Count One of the Amended Complaint is "to recover benefits, to enforce rights and to clarify future benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Am. Compl. 7.) ERISA § 502(a)(1)(B) provides, "A civil action may be brought by a participant or beneficiary *to recover benefits* due to him under the terms of his plan, *to enforce his rights* under the terms of the plan, or *to clarify his rights to future benefits* under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Accordingly, Plaintiff brought Count One as a claim for benefits pursuant to ERISA § 502(a)(1)(B).

(Court's September 17, 2007 Order at 10 n.3.)

is Count One of Plaintiff's Amended Complaint [docket entry 13], refiled as an "Amendment and Supplement to First Amended Class Action Complaint" (Second Amended Complaint) [docket entry 62].

Plaintiff makes several distinct legal allegations within Count One. First, Plaintiff alleges that the Committee lacked the authority to amend the Plan to delete the $700 monthly supplemental benefit. Second, Plaintiff alleges that the Committee violated ERISA's anti-cutback rule and corresponding notice requirement when it terminated the $700 supplemental benefit. Third, Plaintiff argues that the Committee was operating under a conflict of interest when it made its decision. Fourth and finally, Plaintiff insists that the Committee breached its fiduciary duty when it most recently denied Plaintiff's claim for benefits.[4]

Although this case was brought under § 502(a)(1)(B), it is not the typical ERISA denial-of-benefits case. Whether the Committee properly denied Plaintiff's claim for benefits is an issue, but, before reaching that issue, the Court must first decide whether the Committee's action in terminating the $700 supplement violated the anti-cutback rule. If it did, then Plaintiff is entitled to relief. If the Committee's action did not violate the anti-cutback rule, then the Court must consider Plaintiff's argument that the Committee lacked authority to amend the Plan. Related to this issue is Plaintiff's argument that Defendants are estopped from denying his claim for benefits. If the Committee lacked authority, then the amendment did not become valid until the Board-approved amendment of

_____

[4]Plaintiff's claim for breach of fiduciary duty was not originally asserted in Count One, but was set forth in Count Two of the Amended Complaint. As noted in the Court's September 17, 2007 Order, "The Fourth Circuit has held that plaintiffs may not seek relief simultaneously under ERISA § 502(a)(1)(B) and ERISA § 502(a)(3). *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106-07 (4th Cir. 2006)." The Court dismissed the breach of fiduciary duty claim, and, as Plaintiff is still asserting a claim for benefits under § 502(a)(1)(B), its dismissal remains proper. Thus, the Court will not further consider Plaintiff's breach of fiduciary duty argument.

December 2005, which occurred after Plaintiff retired. If the Committee acted within its authority in amending the Plan, then the Court must consider whether the Committee properly denied Plaintiff's claim for benefits, applying the more common ERISA-benefits analysis. Finally, to the extent that questions remain unresolved, the Court will examine Defendant's counterclaim, which seeks to recoup $9,100 of allegedly erroneously paid benefits from Plaintiff.

           B.      *Whether Deletion of § 4.12(a) from the Plan violated ERISA's Anti-Cutback Rule*

As discussed above, the first issue the Court must resolve is Plaintiff's contention that the Committee's decision to delete § 4.12(a) (also referred to as the $700 monthly supplement) from the Plan violated ERISA's anti-cutback rule. Both parties agree that the question of whether a plan amendment violates the anti-cutback rule is a question of law reviewed by the Court de novo.[5] (Pl.'s Reply to Court's Interrogatories 2; Defs.' Reply to Court's Interrogatories 1.) *See also Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) (noting district court "correctly used de novo review in determining if the plan violated the anti-cutback provisions of ERISA.").

The anti-cutback rule is codified as follows:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in [29 USCS § 1082(d)(2) or 1441].
> (2) For purposes of paragraph (1), a plan amendment which has the effect of--

---

[5]However, there is authority that would support review of the Committee's determination for an abuse of discretion. *See, e.g., Davis v. Burlington Industries, Inc.*, 966 F.2d 890, 894-895 (4th Cir. 1992) (applying abuse of discretion standard to anti-cutback rule claim so long as plan language was unclear). Nonetheless, as developed below, the result is the same regardless of the standard of review applied.

|     |     |
| --- | --- |
| (A) | eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or |
| (B) | eliminating an optional form of benefit, |

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. [. . .]

29 U.S.C. § 1054(g). Stated differently, the anti-cutback rule "prohibits any amendment of a pension plan that would reduce a participant's 'accrued benefit.' " *Central Laborers Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004).

ERISA defines "accrued benefit" as a "benefit created by the accumulation of contributions and limited in its form of payment as '*determined under the plan*' and 'expressed in the form of an annual benefit commencing at normal retirement age' (emphasis [original]), but it does not describe what a given plan participant's accrued benefit would be." *Board of Trustees of the Sheet Metal Workers' Nat'l Pension Fund v. Commissioner,* 318 F.3d 599, 603 (4th Cir. 2003) (quoting 26 U.S.C. § 411(a)(7)(i)). "The anti-cutback rule forms part of ERISA's assurance that benefits promised will be benefits paid. But the security provided by the anti-cutback rule is bounded by the terms of the plan in that the plan defines the benefits promised." *Id.* at 604.

Thus, the starting point in the Court's inquiry regarding whether the anti-cutback rule was violated is the Plan language. In addition to the Plan language, the Court will examine the applicable regulations and WSMS' recruitment materials, which each side relies on in support of its arguments.

1.     The Plan Language

As quoted in its entirety above, the Plan defines "accrued benefit" as "the normal retirement Pension computed under Section 4.01(b) . . . plus any applicable supplements described in Section

4.12." (A.R. App'x 22.)  The $700 monthly supplement is contained in § 4.12.  Thus, by the Plan terms, the $700 monthly supplement could be part of the accrued benefit if it is "applicable."

Section 4.12 contains two supplements: the $700 monthly supplement and a $200 monthly supplement.  Aside from the heading "Supplemental Benefits," the Plan fails to separately characterize these two monthly supplements.  However, the supplements differ in that the $200 supplement commences at normal retirement age, while the $700 supplement terminates one month prior to normal retirement age.  Moreover, if one retires early, he is still entitled to a portion of the $200 supplement, calculated using a formula based on his years of service.  The $700 supplement is the same for every retiree who retires in the same calendar year, regardless of his years of service.  Thus, looking solely at the Plan language one could conclude that the $700 supplemental benefit is not an "accrued benefit" because it fails to "accrue" like the $200 supplement.[6]

## 2.    The Applicable Regulations

The parties also focus on the regulatory language in support of their relative positions.  Plaintiff insists that the $700 supplement is an "early retirement benefit" and, therefore, protected by the anti-cutback rule.  In contrast, Defendants argue that the $700 supplement is a social security supplement, which is a type of ancillary benefit that is not subject to the anti-cutback rule.

---

[6]Defendants argue that the $700 supplemental benefit cannot be an accrued benefit because it fails to *commence* at normal retirement age.  However, as noted above, for purposes of the anti-cutback rule, accrued benefits can include early retirement benefits, which, by definition, commence *before* one reaches normal retirement age.

In advancing their arguments, both parties rely on the IRS regulations,[7] which define early retirement benefits and social security supplements. An early retirement benefit is defined as "the right, under the terms of a plan, to commence distribution of a retirement-type benefit at a particular date after severance from employment with the employer and before normal retirement age." 26 C.F.R. § 1.411(d)-3(g)(6)(i). The same regulations define "retirement-type benefit" as,

> (A)    The payment of a distribution alternative with respect to an accrued benefit; or
>
> (B)    The payment of any other benefit under a defined benefit plan (including a QSUPP as defined in § 1.401(a)(4)-12) that is permitted to be in a qualified pension plan, continues after retirement, and is not an ancillary benefit.

26 C.F.R. § 1.411(d)-3(g)(6)(iii). In other words, an early retirement benefit is a retirement-type benefit that is paid before one retires.

Applying the regulatory definition, it is unclear if the $700 monthly supplement is a retirement-type benefit. First of all, the supplement is not a distribution alternative (such as a lump sum payment or an annuity). Second, as to part (B) of the definition, the parties dispute whether the supplement is an "ancillary benefit." Thus, the Court is back where it began: the $700 supplement is not an early retirement benefit if it is an ancillary benefit. Elsewhere, however, the regulations suggest that a supplement paid in lieu of medical benefits, as was the $700 supplement, is an ancillary benefit. *See* 26 C.F.R. § 1.411(a)-7(a)(1)(ii) ("[A]ccrued benefits do not include ancillary benefits not directly related to retirement benefits such as payment of medical expenses (or insurance premiums for such expenses) . . . or medical benefits described in section 401(h).").

_____

[7]"The regulations under section 411 [of the internal revenue code] are also applicable to provision of ERISA Title I." *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 747 (2004).

The case law, however, offers further guidance: "Early retirement benefits are generally benefits that become available upon retirement at or after a specified age which is below the normal retirement age, and/or upon completion of a specified period of service." *Call v. Ameritech Management Pension Plan*, 475 F.3d 816, 820-21 (7th Cir. 2007) (Posner, J.). The $700 supplement fails to satisfy Judge Posner's definition because it does not become available at a specified age or upon completion of a specified period of service. It simply applies to anyone who opts for early retirement regardless of his age or service completed. In short, after considering the regulatory definition and the case law, the Court concludes that the $700 supplement is not an early retirement benefit.

On the other hand, the $700 supplement fits more closely into the definition of a social security supplement, which is defined as:

> a benefit for plan participants which-- (A) Commences before the age and terminates before the age when participants are entitled to old-age insurance benefits, unreduced on account of age, under title II of the Social Security Act, as amended (see section 202(a) and (g) of such Act), and (B) Does not exceed such old-age insurance benefit.

26 C.F.R. § 1.411(a)-7(c)(4)(ii). Because it commences and terminates before one begins collecting social security benefits, the $700 monthly supplement resembles a social security supplement. As to the second part of the regulatory definition, Defendants contend that the $700 supplement would be less than the social security benefit that WSMS employees would receive. Based on the record, the Court is unable to verify this contention, but Plaintiff fails to dispute it. Thus, the $700 supplement as defined in the Plan appears to qualify as a social security supplement.[8]

_____

[8]The Court need not ultimately decide whether the supplement is a social security supplement because, for reasons previously discussed and for reasons considered below, the

3.    WSMS Plan Promotional Materials

An additional piece of evidence that both parties point to in support of various arguments is a slide show that was shown to employees as part of a recruitment presentation for WSMS. Plaintiff witnessed this presentation. The slides for the presentation refer to the $700 monthly supplement as a "temporary supplement" "payable until age 65." (A.R. App'x 507.) Perhaps more enlightening, the slides note that the $700 monthly supplement is "paid in lieu of post retirement medical." (A.R. App'x 510.) Moreover, the yearly increase in the amount of the supplement, discussed above, is based on the assumption that medical and dental costs escalate at five percent per year. (A.R. App'x 513.) This difference is significant when compared to the $200 monthly supplement in that the increase in the amount of the § 4.12(a) supplement ($700) is not due to any increase in service time with the company. In contrast, the § 4.12(b) supplement ($200) does "accrue," as that term is traditionally understood, the more years one works with WSMS. In short, the insights offered by the recruitment slide show support Defendants' argument that the $700 supplement is not part of the accrued benefit, but that the $200 supplement is the "*applicable supplement*" included as part of the accrued benefit.

To summarize, in light of the Plan terms, the regulatory definitions, and WSMS's promotional materials, the Court concludes that the $700 monthly supplement is not an early retirement benefit or any other type of accrued benefit. Instead, given that it was paid in lieu of post-retirement medical benefits and that it does not "accrue," it is a type of ancillary, welfare benefit.[9]

_____

supplement is clearly some type of ancillary benefit.

[9]Although the Plan is a pension plan and not a welfare plan, courts routinely find welfare provisions inside pension plans. *See, e.g., In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250, 255 (3d Cir. 2008) (finding death benefit in pension plan to be welfare benefit); *McBarron*

It is well-established that welfare benefits, unlike retirement benefits, are not protected by the anti-cutback rule. *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 925 (5th Cir. 1995). Therefore, the Court concludes that Defendants did not violate ERISA's anti-cutback rule when they deleted § 4.12(a) from the Plan.

C.    *Whether Defendants' Actions in this Case Violated ERISA's Notice Requirements*

Related to Plaintiff's argument that deleting the $700 supplement violated the anti-cutback rule is the contention that in terminating the supplement, Defendants failed to comply with ERISA's notice requirements.

Specifically, Plaintiff cites ERISA § 204(h), which provides:

> (h) Notice of significant reduction in benefit accruals.
>
>   (1) An applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual . . . .
>
>   (2) The notice required by paragraph (1) shall be written in a manner calculated to be understood by the average plan participant and shall provide sufficient information . . . to allow applicable individuals to understand the effect of the plan amendment. . . .
>
>   (3) Except as provided in regulations prescribed by the Secretary of the Treasury, the notice required by paragraph (1) shall be provided within a reasonable time before the effective date of the plan amendment.
> . . .
>
>   (6) (A) In the case of any egregious failure to meet any requirement of this subsection with respect to any plan amendment, the provisions of the applicable pension plan shall be applied as if such plan amendment entitled all applicable individuals to the greater of--
>
>       (i) the benefits to which they would have been entitled without regard to such amendment, or
>
>       (ii) the benefits under the plan with regard to such amendment.

---

*v. S & T Indus., Inc.*, 771 F.2d 94, 98 (6th Cir. 1985) (holding that disability provision in comprehensive retirement plan constituted a welfare plan).

(B) For purposes of subparagraph (A), there is an egregious failure to meet the requirements of this subsection if such failure is within the control of the plan sponsor and is--

(i) an intentional failure (including any failure to promptly provide the required notice or information after the plan administrator discovers an unintentional failure to meet the requirements of this subsection),

(ii) a failure to provide most of the individuals with most of the information they are entitled to receive under this subsection, or

(iii) a failure which is determined to be egregious under regulations prescribed by the Secretary of the Treasury.
. . .
(9) For purposes of this subsection, a plan amendment which eliminates or reduces any early retirement benefit or retirement-type subsidy (within the meaning of subsection (g)(2)(A)) shall be treated as having the effect of reducing the rate of future benefit accrual.

29 U.S.C. § 1054(h).

"Section 204(h) requires notice for certain plan amendments, but it only affords a remedy to plan participants for an 'egregious failure' to comply with those requirements." *Brady v. Dow Chemical Co. Ret. Bd.*, 311 Fed. App'x 626, 629 (4th Cir. Feb. 18, 2009).  As to the type of plan amendments that trigger notice, the regulations make clear that the notice  applies only to amendments affecting accrued benefits or early retirement benefits.  *See Notice of Significant Reduction in the Rate of Future Benefit Accrual*, 63 Fed. Reg. 68,678, 68,680 (Dec. 14, 1998) (codified at 26 C.F.R. pts. 1, 602) ("For purposes of section 204(h), an amendment to a defined benefit plan affects the rate of future benefit accrual only if it is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age. For this purpose, the annual benefit commencing at normal retirement age is the benefit payable in the form in which the terms of the plan express the accrued benefit.").  As discussed above, the $700 monthly supplement was not an early retirement benefit or any other type of accrued benefit.  Therefore, its deletion did not trigger the notice requirements of § 204(h).

Admittedly, the Court is troubled by the fact that Plaintiff was not notified of the termination of the $700 supplement at an earlier date. Unfortunately, because § 204(h) does not apply to the termination of ancillary benefits, it fails to provide a remedy in this case. Plaintiff fails to point to another notice requirement that would support his argument, and the Court is unaware of such a provision. Therefore, Plaintiff's argument that Defendants violated ERISA § 204(h) fails.

D.  *Whether the Committee had the Authority to Delete the $700 Monthly Supplement from the Plan*

As discussed above, eliminating § 4.12(a) from the Plan did not violate the anti-cutback rule. Plaintiff insists, however, that the Amendment is, nonetheless, invalid because the Benefits Committee, which approved the amendment, lacked the authority to amend the Plan. The Court disagrees.

As noted above, the Plan gives the Benefits Committee the authority to "approve Plan amendments that: (A) Are required by ERISA and all other applicable governmental regulations for Plan qualification, (B) Do not materially increase costs to the Plan, or (C) Clarify ambiguous or unclear Plan provisions." (A.R. App'x 88; § 7.01(b)(i).) Use of the conjunction "or" requires that only one of the conditions be present. In that deleting § 4.12(a) from the Plan did not materially increase costs to the Plan, the Committee appears to have acted within the authority granted by the Plan when it deleted the $700 supplement.[10]

Plaintiff, however, distinguishes between the power to "approve" Plan amendments and the power to "make" Plan amendments. In other words, Plaintiff argues that while the Committee could

---

[10]Defendant also argues that the Amendment at issue was required by ERISA because its continued inclusion may have caused the Plan to lose its favorable tax status. However, as only one of the conditions is required, the Court need not address that issue.

"approve" Plan amendments, it lacked the authority to "make" such amendments. The Court is unpersuaded by this distinction, especially when considered in light of why and how the Plan was amended in this case. From what is before the Court, it appears that lawyers and actuaries recommended that the Committee amend the Plan because § 4.12(a) could be viewed as discriminatory, threatening the Plan's favorable tax status. (A.R. App'x 169.) Following this recommendation, the Committee "approved" the termination of § 4.12(a) from the Plan, acting under the authority of § 7.02(b)(i).

Plaintiff also points to § 10.01 of the Plan entitled, "Amendment of the Plan," which grants the Board of Directors and several company officers the authority to amend the Plan. However, simply because the Board of Directors is granted the authority to amend the Plan does not imply that the Committee lacks such authority. As noted above, § 7.02 clearly grants the Committee the authority to amend when listing the powers of the Committee. Moreover, the type of amending authority granted by § 7.02 and § 10.01 is different. Unlike the Committee's authority, the Board's authority to amend is not constrained by three enumerated conditions. Thus, given their distinct characteristics, it is unsurprising that power to amend is provided for in two separate sections of the Plan.

Finally, Plaintiff points out that even the broad power to amend granted to the Board of Directors is limited because even the Board cannot eliminate accrued benefits. This limitation makes sense in light of ERISA's anti-cutback rule discussed above. However, for the reasons noted above, the $700 supplement was not an accrued benefit, and, therefore, the protections granted to accrued benefits by § 10.01 fail to advance Plaintiff's argument that the Committee lacked the authority to amend the Plan.

E.    *Whether Defendants are Estopped from Denying Plaintiff's Claim*

Before delving into whether the Committee's denial of Plaintiff's claim for benefits was an abuse of discretion, one additional issue needs to be resolved. Throughout this litigation, Plaintiff has asserted that Defendants should be estopped from denying Plaintiff's claim for benefits because Defendants promised Plaintiff, through their recruitment materials, that he would receive a $700 monthly supplement if he took early retirement. As noted above, Plaintiff attended a slide show presentation where employees of WSMS explained the retirement benefits that eligible employees could receive, including the "temporary" $700 monthly supplement that was payable until the age of sixty-five. (A.R. App'x 506-514.) Plaintiff alleges that he reasonably relied to his detriment on this promise.

Although the Court sympathizes with Plaintiff and his reliance on Defendants representations, unfortunately for Plaintiff, controlling case law holds that ERISA preempts state law claims of estoppel.[11] *See White v. Provident life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997) ("[S]tate law waiver and estoppel claims [are] preempted by ERISA, [because] such claims pose a risk of creating 'conflicting employer obligations and variable standards of recovery.'") (citation omitted). Moreover, federal common law interpreting ERISA "does not incorporate the principles of waiver and estoppel." *Id.* Further, allowing an estoppel claim in this case would eviscerate the Committee's Plan-provided right to amend the Plan. The law is very clear that estoppel cannot be used to modify the terms of a written Plan. *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) ("In this circuit, equitable estoppel is not available to modify the written terms of an ERISA plan in the context of a

---

[11]The Court sits to interpret the law as it is and not as the Court might wish it to be.

participant's suit for benefits."); *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1011 (4th Cir. 1996) ("We have never recognized estoppel arguments which would serve to vary the terms of a written plan.") (citation omitted). In light of this controlling precedent, Plaintiff's estoppel claim fails.

F.     Whether the Administrative Committee Abused its Discretion in Denying Benefits to Plaintiff

With all of these issues decided, the Court is now positioned to conduct a more traditional and typical ERISA denial-of-benefits analysis.

a.     Standard of Review

Before evaluating the merits of the parties relative positions, the Court must first determine the appropriate standard of review. Unfortunately, as with almost all other issues in this case, the parties failed to reach an agreement as to the appropriate standard of review. Plaintiff insists that the Court's review is de novo, while Defendants' contend that the abuse of discretion standard applies.

As explained recently by the Fourth Circuit, "judicial review of an ERISA plan administrator's decision is 'under a de novo standard unless the plan provides to the contrary.' But when the plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard." *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 259-60 (4th Cir. 2009) (internal citations omitted). As quoted above, the Plan gives "total and complete discretion" to the Benefits Committee to interpret the Plan, including "the power to construe and interpret the Plan." (A.R. App'x 89; § 7.06.) In light of this controlling precedent and the discretion conferred on the Benefits Committee by § 7.06 of the Plan, the Court will apply an abuse of

discretion standard of review to the Benefits Committee's ultimate decision to deny Plaintiff's claim for benefits.

When evaluating a plan administrator's decision for abuse of discretion, the Court may consider only evidence before the plan administrator at the time of the decision. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994). The administrator's decision must stand unless unreasonable, even if the Court would have reached a different conclusion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Booth v. Wal-Mart Stores Inc. Assoc. Health and Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks and citation omitted). Substantial evidence is the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that "a reasoning mind would accept as sufficient to support a particular conclusion." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984), *overruled by implication on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); *see also United Seniors Ass'n v. Social Sec. Admin.*, 423 F.3d 397, 404 (4th Cir. 2005) (explaining substantial evidence in different context).

Despite the discretion conferred on the Committee by the Plan, Plaintiff argues that de novo review should apply because the Committee was operating under a conflict of interest. Recently, the Supreme Court in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), explained the impact of a conflict of interest on a court's review of a claim for benefits. The *Glenn* Court held that there is a conflict of interest where the same entity determines pension eligibility and pays plan

23

benefits. *Glenn*, 128 S. Ct. at 2346. This conflict of interest "should be 'weighed as a factor in determining whether there is an abuse of discretion.'" *Id.* at 2350 (quoting *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989)).

After *Glenn* was decided, the Fourth Circuit reaffirmed that courts should consider the factors outlined in *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342-43 (4th Cir. 2000) when determining if a plan administrator abused its discretion, "taking into account any conflict of interest as one of the factors considered in determining reasonableness." *Champion*, 550 F.3d at 359. Those factors include

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* (quoting *Booth*, 201 F.3d at 342-43).

Each of the *Booth* factors, if relevant, is considered below.

### b. Analysis of *Booth* Factors

### 1. Language of the Plan

As considered in detail above, the Plan language supports the Committee's decision to deny Plaintiff's claim for benefits. The primary issue in this case involves the termination of the $700 supplement from the Plan. As already stated, § 7.02 of the Plan supports Defendants' determination that the Benefits Committee had the authority to amend the Plan. Furthermore, this amendment was consistent with the Plan's requirement in § 10.01 that an amendment should not reduce an "accrued

benefit" as that term is defined in § 1.01 of the Plan. Thus, for the reasons discussed above, the Committee's December 28, 2004, decision to delete the $700 supplemental benefit was valid. Because Plaintiff retired *after* the Committee's decision, § 4.12(a) was no longer part of the Plan at the time he took early retirement. Therefore, the Committee's decision to deny Plaintiff's claim for benefits based on the former § 4.12(a) was consistent with the Plan language because, at the time his claim was denied, the $700 monthly supplement was no longer part of the Plan.

## 2. The purposes and goals of the Plan

Plaintiff maintains that one of the purposes and goals of the Plan was to induce WSRC employees to transfer to WSMS, and one of the ways the Plan did this was by including the supplemental benefits of § 4.12. Plaintiff's position is supported by the recruitment slide show, which prominently addressed the supplemental benefits. (A.R. App'x 503-535.) Thus, to the extent the supplements were included to induce employees like Plaintiff to join WSMS, factor two seems to support Plaintiff's position.

However, as Defendants point out, the Plan was created to do more than just recruit employees to join WSMS. The Plan is a pension plan, and, thus, one of its primary purposes is to provide retirement income to participants. According to the Committee, part of its job in administering the Plan is to ensure that the Plan maintains its favorable tax treatment so that all retirees can properly benefit from the Plan. Acting on advice from WSMS attorneys and Plan actuaries, the Committee determined that continuation of the $700 supplement could cause the Plan to fail discrimination testing, resulting in a loss of its favorable tax status. (A.R. App'x 493, 498, 927, 934.) The Committee considered this in making its decision to amend the Plan and also to deny Plaintiff's claim for benefits.

In short, after considering the arguments of both parties, *Booth* factor two fails to tip strongly in favor of either party.

      3.    <u>The adequacy of the materials used to make the decision and the degree to which they support it</u>

In its letter denying Plaintiff's appeal, the Committee stated that it considered the Plan, the slides presented to potential WSMS employees, an affidavit of Beverly Adams, a human resources consultant for WSMS, Plaintiff's original claim, the Committee's first denial letter, Plaintiff's appeal letter and exhibits, the Committee's Amendment, the Board's Amendment, and a memorandum addressed to the Committee from counsel for WSMS. (A.R. App'x 498.)

For reasons previously discussed, the Plan language generally supports the Committee's decision as does the memorandum from counsel addressing Plaintiff's claims. The slides support the decision to the extent that they make clear that the $700 supplement was intended to be in lieu of post-retirement medical benefits and was marketed as a temporary benefit. However, the slides also suggest that the $700 supplement is payable until one reaches age 65. Thus, the slides fail to strongly support either position. The affidavit of Ms. Adams is used to interpret the slides, and, as a result, it simply strengthens the Committee's reliance on the slides.

The remaining documents are part of the administrative history of Plaintiff's claim, and those documents provide context and additional support for the Committee's decision. In short, an analysis of *Booth* factor three reveals that the Committee reviewed a variety of materials in reaching its decision and most of the materials considered support the reasonableness of its decision.

      4.    <u>Whether fiduciary's interpretation was consistent with other provisions in the Plan and with earlier interpretations of the Plan</u>

Again, as stated above, when the Committee denied Plaintiff's claim for benefits, it was interpreting a Plan that did not include the $700 monthly supplement. Nonetheless, the Committee proceeded to examine the amendment that deleted § 4.12(a) from the Plan, and it determined that the Plan amendment was valid and supported by the other terms of the Plan.

The Court has already extensively examined the validity of the Committee's amendment and interpretation of the $700 supplement in light of other provisions in the Plan, including a comparison of § 7.01 and § 10.01 as well as § 4.12(a) and (b) in light of the definition of accrued benefit in § 1.01. The Court found no inconsistency between the Committee's interpretation and the other provisions of the Plan. Furthermore, the Committee's decision to deny Plaintiff's claim for benefits is consistent with § 4.03(b), which provides that an employee's early retirement shall equal his accrued benefit, unless he opts for payment of early retirement before his normal retirement age, at which point the monthly pension is adjusted based on his age and years of service. (A.R. App'x 49-50.)

As to previous interpretations of the Plan, there is nothing in the record that points to any previous interpretation of the Plan that prohibited the Committee from amending the Plan. Thus, *Booth* factor four also favors Defendants.

<u>5.</u>     <u>Whether decisionmaking process was reasoned and principled</u>

The Committee provided a detailed explanation for its denial of benefits both in considering Plaintiff's original claim and Plaintiff's appeal. It separately considered and addressed all of Plaintiff's arguments, and it reached its decision based on its interpretation of the Plan language considered in light of the purposes of the Plan. (A.R. App'x 486-99.) Thus, this factor ways in favor of Defendants.

6.     Whether the decision was consistent with the procedural and substantive requirements of ERISA

Like factor five, *Booth* factor six supports the Committee's decision. For the reasons discussed above, the Committee's actions complied with ERISA's anti-cutback rule and failed to implicate ERISA's notice requirements because the $700 monthly supplement was not an accrued benefit. The Committee's determination that the benefit is not an accrued benefit is consistent with the statutory definition of accrued benefit, which is defined as, "(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 204(c)(3) [29 USCS § 1054(c)(3)], expressed in the form of an annual benefit *commencing at normal retirement age*. . ." 29 U.S.C. § 1002(23)(A) (emphasis added). As previously noted, the $700 monthly supplement did not commence at normal retirement age. Thus, in addition to the provisions cited above, the statutory definition of "accrued benefit" further supports the Committee's decision to delete the $700 supplement and, subsequently, to deny Plaintiff's claim for benefits.

7.     Any external standard relevant to the exercise of discretion

The parties have not pointed to any external standard relevant in this case. Thus, this factor need not be considered.

8.     The fiduciary's motives and any conflict of interest it may have

The final *Booth* factor considers whether the Committee was operating under a conflict of interest when it made the decision to deny Plaintiff's claim for benefits. As noted above, prior to filing his response to Defendants' initial motion for summary judgment, Plaintiff sought additional discovery into a potential conflict of interest of the Benefits Committee. The Court denied the request, concluding that there was sufficient evidence in the record to consider any potential conflict in light of the Committee's decision. The record establishes that all the Committee members are

employees of Washington Group International, which is the parent company of WSMS.  However,

according to Plaintiff, one committee member, Defendant Dave Hollan, was formerly employed by

the human resources department of WSMS.  At the time he was employed by WSMS, Plaintiff

learned from human resources about the $700 monthly supplement.  Nonetheless, no members of

the Committee were employed by WSMS when they considered Plaintiff's claim.

In addressing this situation the Supreme Court recently noted,

> Often the entity that administers the plan, such as an employer or an
> insurance company, both determines whether an employee is eligible
> for benefits and pays benefits out of its own pocket. We here decide
> that this dual role creates a conflict of interest; that a reviewing court
> should consider that conflict as a factor in determining whether the
> plan administrator has abused its discretion in denying benefits; and
> that the significance of the factor will depend upon the circumstances
> of the particular case.

*Glenn*, 128 S. Ct. at 2346.  Thus, inasmuch as WSMS serves as both administrator of the Plan with

discretionary authority to determine entitlement to benefits and pays those benefits out of its own

pocket, it was operating under a conflict of interest in this case.

Defendants insist, however, that a conflict does not exist because the Plan is funded by a

trust.  The Fourth Circuit recently noted

> [b]ecause the Plan's benefits are funded by a separate trust to which
> [defendant] does not have access for its own purposes, the Plan does
> not have significant incentives to benefit itself by denying benefits.
> . . . To the extent this type of plan structure creates any conflict of
> interest on the part of its administrator, that conflict may be deemed
> of such little importance as to recede "to the vanishing point."

*Lance v. Ret. Plan of Int'l Paper Co.*, 331 Fed. App'x 251, 255 (4th Cir. May 29, 2009) (quoting

*Glenn*).   However, at least a portion of the $700 supplement came not from the trust, but directly

from the operating budget of WSMS.  *See* A.R. App'x 012 (letter from WSMS President noting that

beginning January 1, 2005, supplement was paid out of WSMS general assets). Thus, to that small extent a conflict of interest existed. But, that conflict was minimized by the fact that none of the Committee members were employed by WSMS at the time the benefits' decision was made and also by the fact that the overwhelming majority of Plaintiff's retirement benefits were funded by a trust.

Given that the other *Booth* factors largely support the reasonableness of the Board's decision, this factor, though favoring Plaintiff, fails to tip the balance in Plaintiff's favor.

To summarize, the majority of the *Booth* factors support the reasonableness of the Committee's decision to deny Plaintiff benefits. Therefore, the Court finds that the Committee did not abuse its discretion in denying Plaintiff's claim.

F.      *Defendants' Counterclaim*

The remaining issue before the Court on the parties cross motions for summary judgment is Defendants' counterclaim. On September 10, 2008, Defendants filed an amended counterclaim seeking to recover $9,100 in benefits from Plaintiff, which it claims it erroneously paid following the deletion of § 4.12(a) from the Plan. To support their counterclaim, Defendants rely on § 7.15 of the Plan, which provides that the Benefits Committee can recoup payments made "in excess of the amount, if any, to which he is entitled, by reason of a calculation error or otherwise." (A.R. App'x 92.) Given the pending litigation, Defendants opted to seek recoupment in the form of a counterclaim, rather than withholding it from Plaintiff's monthly pension.

Unlike the previous analysis, Defendants' counterclaim does not involve a decision by the Committee, which is reviewed for abuse of discretion. Instead, the Court is being asked to determine as a matter of law that Defendant is entitled to recoup $9,100 from Plaintiff. In this case, there are disputed issues of material fact which preclude the Court from making this determination

in Defendants' favor. Specifically, among other disputed factual issues, is the question of whether the Plan actually suffered a loss warranting recoupment. As to this question, there are discrepancies within the record. Specifically, a letter sent to retirees on July 29, 2005, states that beginning in January 2005, the $700 supplement would no longer be paid from the Plan but from WSMS' general assets. (A.R. App'x 12.) If this is true, the recoupment provision of the Plan (§ 7.15) relied on by Defendants to support their counterclaim may not apply. On the other hand, a letter to Plaintiff dated June 8, 2006, implies that the $700 supplement was paid out of Plan assets. At a minimum, this discrepancy creates a disputed issue of material fact as to the counterclaim. Thus, the Court will deny Defendants' motion for summary judgment as to Defendants' counterclaim.

## IV.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Defendants' motion for summary judgment [111] is **GRANTED IN PART** and **DENIED IN PART** as discussed herein. Plaintiff's cross motion for summary judgment [115] is **DENIED**.

In light of this disposition, Plaintiff's pending motion for reconsideration [125] is **MOOT** to the extent Plaintiff asks the Court to rule on the motion for class certification before ruling on the pending motions for summary judgment.

Plaintiff's renewed motion for class certification [116] is **DISMISSED**. The Court's rejection of Plaintiff's claims on their merits forecloses the need to consider whether to certify a class as to the same claims.

Finally, the Court hereby orders the Parties to participate in mediation for a second time within 45 days of this Order in an effort to resolve the remaining issues in this case. In the event that

the parties are unable to resolve those issues on their own, they shall submit a proposed scheduling order for addressing Defendants' counterclaim within ten days after the completion of mediation.

**IT IS SO ORDERED**.

Signed this 31st day of March, 2010, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE