**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

Noorali "Sam" Savani and Robert P. Taylor, )
individually and on behalf of others )
similarly situated, )
)                    Civil Action No. 1:06-cv-02805-JMC
              Plaintiff, )
)
     v. )                    **OPINION AND ORDER**
)
Washington Safety Management )
Solutions, LLC, *et al* )
)
            Defendants. )
_____)

      Currently before the court are the parties' cross motions for summary judgment [Dkt. Nos. 199 and 201] arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (2006). The parties seek a determination of whether Defendants violated ERISA's anti-cutback statute, § 204(g), 29 U.S.C. § 1054(g)(2010), in amending the Westinghouse Safety Management Solutions, LLC ("WSMS") Pension Plan (the "Plan") to "freeze benefit accruals" effective December 31, 2005, resulting in the elimination of a Seven Hundred Dollar ($700) supplemental benefit payment to Plan members electing to take early retirement thereafter. *See* Administrative Record, at 145 [Dkt. No. 77-5]. Upon consideration of the written memoranda, the arguments of counsel, and the record, the court denies Defendants' motion and grants Plaintiffs' motion as provided herein.

**FACTUAL AND PROCEDURAL BACKGROUND**

      This class action litigation arose out of several amendments to the Plan affecting the payment of certain benefits, which Plaintiffs Noorali "Sam" Savani and Robert P. Taylor contend violated ERISA's anti-cutback and notice provisions. Plaintiffs were initially employed with Westinghouse Savannah River Company ("WSRC"), and were among a group of WSRC employees recruited to

join WSMS when it was formed in 1997. Plaintiffs participated in WSMS's defined benefit pension plan. Savani participated in the Plan until his retirement in 2005. Taylor participated in the Plan until his retirement in 2006.

Prior to amendments, the Plan defined "Accrued Benefit" to mean, "as of any date of determination, the normal retirement Pension computed under Section 4.01(b) . . . less the WSRC Plan offset as described in Section 4.13, plus any applicable supplements as described in Section 4.12 . . . ." Additionally, the Plan authorized early retirement benefits. Section 4.03(b) of the Plan provided: "The early retirement Pension shall be a deferred Pension beginning on the first day following the Member's Normal Retirement Date and . . . shall be equal to his Accrued Benefit. However, the Member may elect to receive an early retirement Pension beginning before his Normal Retirement Date . . . ." Furthermore, the Plan defined supplemental benefits in Section 4.12 as follows:

4.12 Supplemental Benefits

(a) If a Member who:

(i) otherwise satisfies the requirements for a Pension under this Plan; and

(ii) has at least one year of service with WSMS; and

(iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and

(iv) retires before his Normal Retirement Age from active service on or after October 1, 1998,

he shall be entitled to a monthly supplement (which shall commence with the first Pension payment made under the Plan on account of such retirement and the last payment shall be in the month preceding the Member's attainment of Normal Retirement Age) equal to the following: [omitted]

(b) If a Member who:

(i) otherwise satisfies the requirements for a Pension under this Plan;

2

(ii) has at least one year of service with WSMS; and

(iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and

(iv) either retires from active service on or after October 1, 1998 or dies on or after October 1, 1998 and immediately prior to his death would be entitled to or is receiving an early retirement Pension under the Plan,

he shall be entitled to a $200 monthly supplement commencing at his attainment of Normal Retirement Age, which shall continue after such Member's death to such Member's spouse, if then living, for such spouse's lifetime.

The Plan's benefits committee first amended the Plan on December 28, 2004, to eliminate Section 4.12(a), which granted the $700 monthly supplemental benefit to Plan members electing to take early retirement on or after January 1, 2005.  On December 30, 2005, the WSMS Board of Directors froze the Plan benefit accruals effective December 31, 2005, by amending, *inter alia*, Section 1.01 of the Plan with the addition of the sentence "Notwithstanding anything to the contrary in this Plan, a Member's accrued benefit shall be frozen as of December 31, 2005 and shall not increase thereafter."  The 2005 amendment further modified Section 1.13 defining "Eligibility Service" by adding the following sentence:  "Although the Plan is frozen as of December 31, 2005, an employee shall continue to earn Eligibility service (in accordance with the terms of the Plan for purposes of determining eligibility) for certain benefits and eligibility for a vested Pension."

The parties initially filed cross motions for summary judgment primarily concerning whether the 2004 amendment eliminating § 4.12(a) violated ERISA's anti-cutback and notice provisions. In ruling on the parties' cross motions for summary judgment, the district court determined that the $700 monthly supplemental benefit was not an accrued benefit under the Plan and therefore, the amendment eliminating the supplemental benefit under § 4.12(a) did not violate ERISA's anti-cutback provision, 29 U.S.C. § 1054(g)(1)(providing that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .").

On appeal from the district court's order, the United States Court of Appeals for the Fourth Circuit reversed the district court's decision, holding that the Plan provided for two supplemental benefits – a $700 early retirement benefit[1] in § 4.12(a) and a $200 lifetime supplement in § 4.12(b). The Fourth Circuit further described both supplements as an "accrued benefit" defined by the plain language in the Plan. *See Savani v. Washington Safety Management Solutions, LLC et al*, 474 F. App'x 310, 316 (4th Cir. Mar. 20, 2012). The Court of Appeals noted that

> Regardless of their classification as accrued or ancillary, welfare or pension benefits, the supplements' inclusion in the plain terms of the Plan's accrued benefit calculation necessarily meant that any change to the amount or existence of a § 4.12 supplement constituted a change to an "accrued benefit."

*Id*. Because the anti-cutback provision of ERISA generally prohibits the elimination or decrease of an "accrued benefit," the Fourth Circuit held that the elimination of the $700 monthly supplemental benefit violated ERISA's anti-cutback provision. Therefore, the Fourth Circuit found the 2004 amendment invalid, that Plaintiff Savani was entitled to receive the $700 monthly supplemental benefit on this basis, and remanded the case for further proceedings in accordance with its opinion.

After remand, the case was certified into a class and a subclass. The Class represented by Noorali "Sam" Savani, is defined as:

> Employees of Washington Safety Management Solutions, LLC, formerly Westinghouse Safety Management Solutions, LLC [collectively "WSMS"] who (1) are members of the WSMS Plan, (2) have at least one year of service with WSMS, and (3) transferred to the Plan from an Affiliated Employer as defined in §1.02 of the Plan on or before January 1, 1998, or transferred to the Plan from Washington Savannah River Company, LLC, formerly, Westinghouse Savannah River Company, LLC.

The Subclass represented by Robert P. Taylor, Jr. is defined as:

---

[1] The order also notes that such supplements generally may be referred to as ancillary welfare benefits. However, the Fourth Circuit held that such characterization was not applicable in this case given the Plan's inclusion of the supplements in the definition of an "accrued benefit." Accordingly, Defendants' effort to redefine the $700 supplemental benefit in this manner has already been rejected by the Fourth Circuit and cannot be used to sway the analysis of this court.

All members of the Class defined above who, as of December 31, 2005, either (1) did not have 15 total years of service with WSMS or an Affiliated Employer as defined in §1.02 of the Plan, or (2) was not 50 years of age, or (3) did not meet the 25 years of service and age 45 but less than 50 years of age requirements for an Optional Retirement Pension as defined in §4.04 of the WSMS Plan.

The matter raised in the parties' instant cross motions for summary judgment concern Plaintiff Taylor and the subclass he represents. The parties now seek a determination of the validity of the 2005 amendment freezing the accrual of benefits pursuant to ERISA's anti-cutback statute and whether Plaintiff Taylor and the subclass plaintiffs are entitled to collect the $700 monthly supplemental benefits described in § 4.12(a). The court held a hearing on these motions on February 27, 2013.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to

5

a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the claimant's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

On these cross motions for summary judgment, the parties seek a determination as to whether the $700 monthly supplemental benefit, previously held by the Fourth Circuit to be part of the Plan's defined Accrued Benefits, may be eliminated for Plan members electing early retirement after December 31, 2005, as a result of Defendants' attempt to freeze the accrual of benefits under the Plan through the 2005 amendment.

Congress established ERISA as "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 90 (1983). ERISA's anti-cutback statute generally "prohibits any amendment of a pension plan that would reduce a participant's 'accrued benefit.'" *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004). It provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." 29 U.S.C. § 1054(g)(1).[2] A central objective

---

[2]For purposes of clarification, benefit accrual refers to the rate at which an employee earns benefits to put in his pension account, *see* 29 U.S.C. § 1054, whereas vesting refers to the process by which an employee's already-accrued pension account becomes irrevocably his property, *see* 29 U.S.C. § 1053. *See generally, Heinz*, 541 U.S. at 739.

of ERISA is to protect "employees' justified expectations of receiving the benefits their employers promise them." *Heinz*, 541 U.S. at 743.

> "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan. ERISA does, however, seek to ensure that employees will not be left empty handed once employers have guaranteed them certain benefits. . . . [W]hen Congress enacted ERISA, it 'wanted to . . . mak[e] sure that if a worker has been promised a defined pension benefit upon retirement – and if he has fulfilled whatever conditions are required to obtain a vested benefit – he actually will receive it.' "

*Id.* (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (alterations in original) (citations omitted).

In the earlier appeal of this case, the Fourth Circuit held that the $700 monthly supplemental benefit was an "accrued benefit" as defined by the Plan, and that Defendants' elimination of this early retirement benefit through the 2004 amendment was a violation of ERISA's anti-cutback rule. *See Savani*, 474 F. App'x at 315-16. Necessarily, the unlawful elimination of the $700 monthly supplemental benefit was ineffective at the time of the 2005 amendment. The plain language of the 2005 amendment provided that "a Member's accrued benefit shall be frozen as of December 31, 2005 and shall not increase thereafter." As the Fourth Circuit explained, "prior to the Plan's [2004] amendment, a beneficiary's accrued benefit was calculated by an equation; the accrued benefit equaled the retiree's pension, less a defined offset, plus applicable § 4.12 supplements." *Id.* at 315. Consequently, after the Fourth Circuit's ruling invalidating the 2005 amendment, the calculation of a Plan member's accrued benefit remained unchanged.

It is undisputed that the § 4.12(a) monthly supplemental benefit amount was set at $700 at the time of the 2005 amendment freezing future benefit accruals. It is further unchallenged that the 2005 amendment allowed employees to continue to earn Eligibility service for certain benefits and eligibility for a vested Pension in the Plan. Therefore, in light of the Fourth Circuit's prior decision

invalidating the elimination of the $700 monthly supplemental benefit and the clear language of the 2005 amendment, the court finds that Taylor and the Plan members he represents electing early retirement after December 31, 2005, are entitled to the $700 monthly supplemental benefit provided in § 4.12(a).

Defendants argue that the court's conclusion is inconsistent with recent case law addressing a similar circumstance. *See Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285 (11th Cir. 2012) *cert. denied*, 133 S. Ct. 543 (2012). In *Cinotto*, a Delta employee brought a class action suit against her employer for amending the way it calculated early retirement monthly benefits, arguing that the change violated ERISA's anti-cutback statute. Under Delta's pension plan, participants who reached the age of 52 could begin drawing benefits under an early retirement option, the monthly payments of which were actuarially reduced based on a social security offset calculation. When the social security offset calculation was changed under the amendment to the pension plan, employees who had not reached the age of 52 at the time of the amendment could not take advantage of the more favorable, prior social security offset calculation.

The Eleventh Circuit Court of Appeals addressed whether the Cinotto's accrued benefits included the right to claim the prior social security offset calculation. The court found that, based on the terms of Delta's plan, Cinotto's right to the more favorable offset calculation was dependant on her future service to Delta, i.e. continuing to work until she reached the age of 52 when the early retirement option would be available to her. The court cited to the pension plan's definition of "accrued benefit," which stated that "[n]o participant shall have an accrued benefit based on future or projected service." As a result, the court held that the amendment did not come within the scope of ERISA's anti-cutback rule because Cinotto only had a future expectation for how the social security offset would work if she continued to work until age 52 and then retired from Delta. *See*

*id.* at 1297 (explaining that the anti-cutback statute does not protect mere expectations based on anticipated years of future employment).

*Cinotto* is distinguishable from the case at hand. The Eleventh Circuit's result was largely driven by Delta's pension plan's definition of "accrued benefit," which is diametrically opposed to the Plan definition currently before the court. Unlike the pension plan in *Cinotto*, Defendants' Plan clearly included language in the definition of "accrued benefit" that encompassed the supplement Defendants now wish to refuse to Taylor. Furthermore, Defendants' Plan specifically provided for the continued accumulation of eligibility service credit in its freeze amendment – something that Delta disallowed. As the Fourth Circuit noted in its earlier appeal in this case, "the drafters of a retirement plan may choose to define any benefits as accrued or vested, and thereby trigger ERISA's protections." *Savani*, 474 F. App'x at 315 n.3.

Taylor alternatively argues that the $700 monthly supplemental benefit established in § 4.12(a) of the Plan is an early retirement benefit, and that several circuits have found that the anti-cutback statute, § 204(g), 29 U.S.C. § 1054(g), "extends to all participants the right to 'grow into' a benefit subsidy by satisfying the plan's pre-amendment eligibility requirements." *Bellas v. CBS, Inc.*, 221 F.3d 517, 527 (3d Cir. 2000).

> [A] plan may not be amended to eliminate or reduce an early retirement benefit or a 'retirement-type' subsidy 'with respect to benefits attributable to service before the amendment.' . . . The statute provides that in the case of a retirement-type subsidy, the anti-cutback rule does not apply unless the participant "satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy." Thus, if a plan is amended to eliminate a subsidized early retirement benefit for employees who have completed 30 years of service, the plan would not be required to provide the benefit to an employee who never completes 30 years of service. . . . The courts of appeals that have ruled on an employee's right to "grow into" early retirement benefits have followed this reasoning and have uniformly held that as long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit.

*Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1036 (7th Cir. 1996) (internal citations omitted) (citing other circuit courts for similar proposition). Other courts have recognized that plan participants who have not satisfied the plan conditions at the time of the amendment, must be given the opportunity to "grow into" their early retirement benefits and can do so by satisfying the conditions after an amendment to the plan takes effect. *See Shaver v. Siemens Corp.*, 670 F.3d 462, 489 (3d Cir. 2012) (recognizing that plan participants may grow into their early retirement benefits, but denying plaintiffs' claims on the grounds that an offer for continued employment meant they could never be eligible for permanent job separation benefits); *Arena v. ABB Power T & D Co., Inc.*, 2003 WL 21766568 (S.D. Ind. July 22, 2003) (embracing the reasoning set out in *Bellas*); *Abels v. Titan Int'l, Inc.*, 85 F. Supp. 2d 924, 939 (S.D. Iowa 2000) (amendments purporting to freeze accrual of service credit deprived employees the opportunity to grow into eligibility for subsidized early retirement benefits and/or retirement type subsidies).

The Third Circuit's analysis in *Bellas* is instructive here. In that case, the employer provided a special retirement provision for employees meeting stated age and eligibility service requirements who were terminated as a result of a "Permanent Job Separation." 221 F.3d at 519-20. In 1994, the company amended the plan making it more difficult for an employee to qualify for the special retirement benefits. *Id.* at 520-21. Bellas, who retired in 1997, would have qualified for the special retirement provisions under the plan as it was written prior to 1994, but he did not qualify for the special retirement provisions as it was amended. *Id.* at 521. The Third Circuit affirmed the district court's ruling for Bellas, finding that the benefits were an early retirement benefit and a retirement-type subsidy and thus were protected by ERISA's anti-cutback statute. *Id.* at 540. The court further determined that there "is nothing in the language of [section 1054(g)], or its legislative history, to suggest that a contingent event benefit accrues only upon the occurrence of the contingency. The plain language of the statute reveals that once a benefit is found to be a

10

retirement-type subsidy, it is considered an accrued benefit." *Id* (citing § 204(g); 29 U.S.C. § 1054(g)); *accord, Hunger v. AB*, 12 F.3d 118, 120 (8th Cir. 1993) (finding that the legislative history of § 204(g); 29 U.S.C. § 1054(g) supported the proposition that the anti-cutback statute provides plan participants the right to grow into a benefit subsidy by satisfying the plan's pre-amendment eligibility requirements)).

Although Defendants dispute whether the $700 monthly supplemental benefit established in § 4.12(a) of the Plan is an early retirement benefit, the Fourth Circuit has already resolved this matter in the affirmative. *See Savani*, 474 F. App'x at 315 ("Before the December 2004 amendment, § 4.12 included exactly two supplements: the $700 early retirement benefit described in § 4.12(a) and the $200 lifetime supplement described in § 4.12(b).") (emphasis added). Therefore, Taylor and the prospective class members should have an opportunity to "grow into" eligibility for the supplemental benefit when taking early retirement upon satisfying the eligibility requirements in place at the time of the amendment – primarily attaining 15 years of service and the age of 50 or older. Accordingly, Taylor and the qualifying class members may collect the $700 monthly supplemental benefits provided in § 4.12(a) of the Plan, provided that they meet the Plan eligibility requirements.[3]

## CONCLUSION

For the foregoing reasons, the court **DENIES** Defendants' Cross-Motion for Partial Summary Judgment [Dkt No. 199] and **GRANTS** Plaintiffs' Robert P. Taylor, Jr. (And Putative Subclass') Motion for Summary Judgment [Dkt. No. 201] as set forth herein. The parties shall

---

[3]Defendants contend that Taylor's remaining arguments concerning notice, breach of fiduciary duty, and promissory estoppel are not properly before the court. Because the court has resolved the matter in favor of Taylor and his representative class on other grounds, the court need not address these issues.

confer as to the manner, timing, and content of the notice to the Class and Subclass and report to the court their

recommendations within thirty (30) days of the court's issuance of this order.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 29, 2013
Greenville, South Carolina