**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| Noorali "Sam" Savani and Robert P. Taylor, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 1:06-cv-02805-JMC ) ) |
| v. | ) **OPINION AND ORDER** ) |
| Washington Safety Management Solutions, LLC, *et al* | ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on Defendants' Motion to Remand, or in the Alternative, Motion for Reconsideration [Dkt. No. 230]. Defendants seek to remand the case to the Plan Administrator, arguing that the court improperly interpreted language from the Plan (as defined below) in its Summary Judgment Order [Dkt. No. 228]. Defendants contend such language should be interpreted in the first instance by the Plan Administrator. Alternatively, Defendants assert that the court made a mistake of law requiring reconsideration. Plaintiffs timely filed a Response [Dkt. No. 233] and Defendants replied [Dkt. No. 236]. For the reasons discussed below, the Motion is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

This class action litigation arose out of several amendments to the Plan affecting the payment of certain benefits, which Plaintiffs Noorali "Sam" Savani and Robert P. Taylor contend violated ERISA's anti-cutback and notice provisions. In the summary judgment briefing, the parties sought a determination of whether Defendants violated ERISA's anti-cutback statute, § 204(g), 29 U.S.C. § 1054(g)(2010), in amending the Westinghouse Safety

1

Management Solutions, LLC ("WSMS") Pension Plan (the "Plan") to "freeze benefit accruals" effective December 31, 2005, which resulted in the elimination of a Seven Hundred Dollar ($700) monthly supplemental benefit payment to certain Plan members ("$700 Monthly Supplement").

Prior to the amendments, the Plan defined "Accrued Benefit" to mean, "as of any date of determination, the normal retirement Pension computed under Section 4.01(b) . . . less the WSRC Plan offset as described in Section 4.13, plus any applicable supplements as described in Section 4.12 . . . ." Additionally, the Plan authorized early retirement benefits. Section 4.03(b) of the Plan provided: "The early retirement Pension shall be a deferred Pension beginning on the first day following the Member's Normal Retirement Date and . . . shall be equal to his Accrued Benefit. However, the Member may elect to receive an early retirement Pension beginning before his Normal Retirement Date . . . ." Furthermore, the Plan defined supplemental benefits in Section 4.12 as follows:

> 4.12 Supplemental Benefits
>
> (a) If a Member who:
>
> (i) otherwise satisfies the requirements for a Pension under this Plan; and
>
> (ii) has at least one year of service with WSMS; and
>
> (iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and
>
> (iv) retires before his Normal Retirement Age from active service on or after October 1, 1998,
>
> he shall be entitled to a monthly supplement (which shall commence with the first Pension payment made under the Plan on account of such retirement and the last payment shall be in the month preceding the Member's attainment of Normal Retirement Age) equal to the following: [omitted]

(b) If a Member who:

(i) otherwise satisfies the requirements for a Pension under this Plan;

(ii) has at least one year of service with WSMS; and

(iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and

(iv) either retires from active service on or after October 1, 1998 or dies on or after October 1, 1998 and immediately prior to his death would be entitled to or is receiving an early retirement Pension under the Plan,

he shall be entitled to a $200 monthly supplement commencing at his attainment

of Normal Retirement Age, which shall continue after such Member's death to

such Member's spouse, if then living, for such spouse's lifetime.

The Plan's benefits committee first amended the Plan on December 28, 2004, to eliminate Section 4.12(a), which granted the $700 Monthly Supplement to Plan members electing to take early retirement on or after January 1, 2005.  On December 30, 2005, the WSMS Board of Directors froze the Plan benefit accruals effective December 31, 2005, by amending, *inter alia*, Section 1.01 of the Plan with the addition of the sentence "Notwithstanding anything to the contrary in this Plan, a Member's accrued benefit shall be frozen as of December 31, 2005 and shall not increase thereafter."  The 2005 amendment further modified Section 1.13 defining "Eligibility Service" by adding the following sentence:  "Although the Plan is frozen as of December 31, 2005, an employee shall continue to earn Eligibility Service (in accordance with the terms of the Plan for purposes of determining eligibility) for certain benefits and eligibility for a vested Pension."

The parties initially filed cross motions for summary judgment concerning whether the 2004 amendment eliminating § 4.12(a) violated ERISA's anti-cutback and notice provisions.  In

ruling on the parties' cross motions for summary judgment, the district court determined that the $700 Montly Supplement was not an accrued benefit under the Plan and therefore, the amendment eliminating the supplemental benefit under § 4.12(a) did not violate ERISA's anti-cutback provision, 29 U.S.C. § 1054(g)(1)(providing that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .").

On appeal from the district court's order, the United States Court of Appeals for the Fourth Circuit reversed the district court's decision, holding that the Plan provided for two supplemental benefits – a $700 early retirement benefit in § 4.12(a) and a $200 lifetime supplement in § 4.12(b). The Fourth Circuit further described both supplements as an "accrued benefit" defined by the plain language in the Plan. *See Savani v. Washington Safety Management Solutions, LLC et al*, 474 F. App'x 310, 316 (4th Cir. Mar. 20, 2012). The Court of Appeals noted that

> Regardless of their classification as accrued or ancillary, welfare or pension benefits, the supplements' inclusion in the plain terms of the Plan's accrued benefit calculation necessarily meant that any change to the amount or existence of a § 4.12 supplement constituted a change to an "accrued benefit."

*Id*. Because the anti-cutback provision of ERISA generally prohibits the elimination or decrease of an "accrued benefit," the Fourth Circuit held that the elimination of the $700 Monthly Supplement violated ERISA's anti-cutback provision. Therefore, the Fourth Circuit found the 2004 amendment was invalid and Plaintiff Savani was entitled to receive the $700 Monthly Supplement. *Id.* The Court then remanded the case for further proceedings in accordance with its opinion. *Id*.

After remand, the case was certified into a class and a subclass. The Class represented by Noorali "Sam" Savani, is defined as:

> Employees of Washington Safety Management Solutions, LLC, formerly Westinghouse Safety Management Solutions, LLC [collectively "WSMS"] who (1) are members of the WSMS Plan, (2) have at least one year of service with WSMS, and (3) transferred to the Plan from an Affiliated Employer as defined in §1.02 of the Plan on or before January 1, 1998, or transferred to the Plan from Washington Savannah River Company, LLC, formerly, Westinghouse Savannah River Company, LLC.

The Subclass represented by Robert P. Taylor, Jr. is defined as:

> All members of the Class defined above who, as of December 31, 2005, either (1) did not have 15 total years of service with WSMS or an Affiliated Employer as defined in §1.02 of the Plan, or (2) was not 50 years of age, or (3) did not meet the 25 years of service and age 45 but less than 50 years of age requirements for an Optional Retirement Pension as defined in § 4.04 of the WSMS Plan.

The matter raised in the parties' second set of cross motions for summary judgment concerned Plaintiff Taylor and the subclass he represents. The parties sought a determination of the validity of the 2005 amendment freezing the accrual of benefits pursuant to ERISA's anti-cutback statute and whether Plaintiff Taylor and the subclass plaintiffs (the "Taylor Subclass") are entitled to collect the $700 Monthly Supplement described in § 4.12(a). In holding that the Taylor Subclass would be entitled to this $700 Monthly Supplement, the court reasoned that because the Fourth Circuit determined that the $700 Monthly Supplement was an accrued benefit, that benefit was in place and effective when the 2005 amendment provided that "a Member's accrued benefit shall be frozen as of December 31, 2005 and shall not increase thereafter." Therefore, the accrued benefit that was frozen included the $700 Monthly Supplement.

In order to be entitled to the monthly supplement under § 4.12(a), a Plan member must meet the four requirements enumerated above, including "otherwise satisfy[ing] the requirements for a Pension under this Plan." Defendants argue that because Taylor was only 49 years old on December 31, 2005, he had not fulfilled the age and service requirements under §§ 4.03 and 4.04

5

of the Plan to be eligible for early retirement.  Therefore, Defendants contend, "the $700 had not 'accrued' for Taylor as of December 31, 2005 – and he did not have a *presently* accrued benefit at the time the Plan was frozen."  Def. Reply at 7 (emphasis in original).  Defendants assert that the court improperly interpreted the section of the Plan that reads "[a]lthough the Plan is frozen as of December 31, 2005, an employee shall continue to earn Eligibility Service (in accordance with the terms of the Plan for purposes of determining eligibility) for certain benefits and eligibility for a vested Pension."  Defendants reason that the court inappropriately assumed "certain benefits" included "accrued benefits" without giving the Plan benefits committee an opportunity to construe what Defendants believe is a "patently ambiguous" term.  Reply at 9.

## LEGAL STANDARD

Two separate standards apply to the instant analysis.  First, a district court has discretion to remand an issue to a plan administrator for review or analysis -- any such decision is reviewed for abuse of discretion.  *Champion v. Black & Decker, Inc.*, 550 F.3d 353, 362-63 (4th Cir. 2008).  However, the Fourth Circuit has counseled that "remand should be used sparingly."  *Id.* (quoting *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999)).  Though Defendants urge remand in this case, many of the cases where courts have found remand to be appropriate are "ERISA cases involv[ing] complex medical issues crucial to the interpretation and application of the plan terms."  *Id.* (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)).  Even in cases where remand may be appropriate to consider the plan language, the Fourth Circuit has recommended such action only after "the district court concludes that [a plan administrator] failed to consider […] Plan language" and even then the decision remains soundly within the discretion of the district court.  *See Smith v. Cont'l. Cas. Co.,* 369 F.3d 412 (4th Cir. 2004).

Next, as to the motion for reconsideration, Federal Rule of Civil Procedure 54(b) provides that

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). A district court enjoys broad discretion to reconsider its orders prior to entry of final judgment. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). As Judge Seymour pointed out in *Govan v. Caterpillar, Inc.*, the Fourth Circuit has not articulated a particular standard for Rule 54(b) motions. Civil Action No. 3:10-03132, 2012 WL 5306252, at *2 (D.S.C. Oct. 26, 2012). Most courts have adopted the analysis of Rule 59 in considering such motions – reconsideration is therefore appropriate "(1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice." *Id.*

## ANALYSIS

### A. Remand

Defendants argue the court should remand the case to the Plan's benefits committee to interpret the term "certain benefits." They claim that "at the time Defendants adopted the 2005 Amendment in December 2005 [which included the section on "certain benefits"], Section 4.12(a) was not part of the Plan because it had been eliminated from the Plan in 2005. Thus, the 2005 Amendment was not drafted with any consideration of the effect it might have on Section 4.12(a) of the Plan." Reply at 5-6. Moreover, Defendants claim that the court failed to address

the amendments to Section 1.01 of the Plan that state "[n]otwithstanding anything to the contrary in this Plan, a Member's Accrued Benefit shall be 'frozen' as of December 31, 2005 and shall not increase thereafter." Administrative Record at 145. As discussed below, the court did consider this issue and determined that Taylor could grow into this benefit.

Defendants also argue that remand is required because Plaintiff Taylor failed to exhaust his administrative remedies. This argument fails for reasons that Defendants themselves articulated. In their Response to Plaintiffs' Motion for Partial Summary Judgment, Defendants stated in a footnote[1] "to the extent that the Court finds any ambiguity in the language of the 2005 Amendment, Plaintiff Taylor would need to file a claim under the terms of the Plan, and exhaust his administrative remedies, before litigating this issue." Response at 24 [Dkt. No. 206]. As explicitly set out in the court's Order on Summary Judgment, the court found no ambiguity in the terms of the Plan, as amended in 2005. Moreover, to the extent that Defendants are now trying to raise a broader administrative exhaustion argument, they have waived such by not raising the argument previously – indeed, Defendants did not even broach the exhaustion argument at the lengthy hearing that the court held on the cross-motions for summary judgment. *See Cross v. Fleet Reserve Ass'n Pension Plan*, 2007 WL 7022754 (D. Md. Jul. 3, 2007) (overruled on other grounds by *Cross v. Bragg*, 329 Fed. App'x. 443 (4th Cir. 2009)); s*ee also Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393 (1982). While the court declines to adopt Plaintiff's view that Defendants made this motion in bad faith, the appropriate time to have requested remand would have been immediately after the Fourth Circuit's opinion, when Defendants acknowledged they were aware of this issue. Waiting until more than a year after that opinion and until after

---

[1] Which, to the court's recollection, is the only time prior to this motion that Defendants even mentioned remand. The court finds it pertinent to point out that Defendants themselves requested that the court opine on this provision by filing their second motion for partial summary judgment.

Defendants have received an adverse ruling from this court does not warrant this court's use of its discretion to remand to the Plan's benefits committee.

Next, the court disagrees with Defendants' assertion that the court interpreted "patently ambiguous" language in reaching its conclusion. The court drew specifically on the Fourth Circuit's analysis in reaching its conclusion. In their Order, the Fourth Circuit explicitly articulated that the $700 Monthly Supplement was an "accrued benefit" and thus the pre-2004 calculation of an accrued benefit remains the same. Moreover, the Fourth Circuit explicitly termed the $700 benefit an "early retirement benefit." [Dkt. No. 181 at 11]. While Defendants argue in their Motion that the Fourth Circuit did not intend this meaning, that is for the Fourth Circuit (and not this court or Defendants) to clarify. Defendants themselves acknowledge and this court has ruled that a "participant may be able to 'grow into' an 'early retirement benefit.'" Defendants' Response to Summary Judgment [Dkt. No. 206 at 14]; Order on Partial Summary Judgment [Dkt. No. 228 at 4]. Moreover, the Plan itself provides that "[t]he early retirement Pension shall be a deferred Pension beginning on the first day following the Member's Normal Retirement Date and … shall be equal to his Accrued Benefit." Therefore, the court properly determined that Taylor was entitled to the $700 Monthly Supplement as an accrued benefit under the "terms of the plan." Taylor may appropriately grow into this benefit based on the Fourth Circuit's articulation of it as an early retirement benefit. Finally, based on this analysis, remand to the Plan's benefits committee would be futile because a different interpretation of this clear language would be an abuse of the committee's discretion.

Moreover, based on the Fourth Circuit's opinion and Defendants' own admission, the court determined that Defendants' reliance on *Cinotto v. Delta Air Lines, Inc.* was misplaced. 674 F.3d 1285 (11th Cir. 2012) *cert. denied*, 133 S. Ct. 543 (2012). In *Cinotto*, the plan's

definition of "accrued benefit" emphasized that "[n]o participant shall have an accrued benefit based on future or projected service." Such language is not present in the instant Plan and is distinct from the precise articulation by the Fourth Circuit of the $700 Monthly Supplement as an early retirement benefit.

### B. Reconsideration

Defendants have not offered new evidence or an intervening change in law. Nor have they demonstrated that manifest injustice will result from the court's prior order. As discussed above, the court finds that the clear language of the Plan and the Fourth Circuit's Order supports this court's prior decision. Therefore, the Motion for Reconsideration is DENIED.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Remand, or in the Alternative, Motion for Reconsideration is **DENIED**. The parties are to submit joint proposed class notices for both subclasses by July 12, 2013.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

Greenville, South Carolina
July 2, 2013