# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | | |
|---|---|---|
| NOORALI "SAM" SAVANI and<br>ROBERT P. TAYLOR, Jr.<br>individually and on behalf of others<br>similarly situated,<br><br>Plaintiffs,<br>v.<br><br>URS PROFESSIONAL SOLUTIONS LLC<br>formerly WASHINGTON SAFETY<br>MANAGEMENT SOLUTIONS, LLC,<br>formerly WESTINGHOUSE SAFETY<br>MANAGEMENT SOLUTIONS, LLC,<br>and  WASHINGTON SAFETY<br>MANAGEMENT SOLUTIONS, LLC's<br>PENSION PLAN,  now URS<br>PROFESSIONAL SOLUTIONS<br>PENSION PLAN formerly WSMS<br>PENSION PLAN,<br>WASHINGTON GROUP<br>INTERNATIONAL, INC. now known as<br>URS ENERGY & CONSTRUCTION, INC.<br>and ROGER ALLEN,<br>JULIE TSCHIDA BROWN,<br>DAVE HOLLAN, AND DELOYD CAZIER<br>as TRUSTEES and MEMBERS of<br>the BENEFITS now<br>ADMINISTRATIVE COMMITTEE<br>of URS PROFESSIONAL<br>SOLUTIONS PENSION PLAN,<br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No.: 1:06-cv-02805-JMC |

## ORDER AWARDING ATTORNEY'S FEES, APPROVING COSTS AND
## NAMED PLAINTIFF INCENTIVE AWARDS

This matter comes before the court on Plaintiffs' Unopposed Motion for Approval of Class

Counsel Attorney's Fees, Costs and Incentive Awards for Named Plaintiff filed on December 6, 2013.

(ECF No. 308.)  The court conducted a hearing on these issues, under Fed. R. Civ. P. 23(e), on January

14, 2014.  (ECF No. 321.)  The court has reviewed the materials submitted by the parties and has heard

arguments presented at the hearing.  For the reasons cited herein, the court finds and concludes, as

follows:

1.      As a preliminary matter, this court has jurisdiction over the subject matter of this action,

the Parties, and the Class.

2.      Notice of the requested award of attorney's fees, cost reimbursement, and Named Plaintiff

incentive award was directed to Class members in a reasonable manner through first-class mailing to their

most recent known addresses on December 12, 2013 and complies with Fed. R. Civ. P. 23(h)(1).

3.      Class members were given the opportunity to object to fees, costs and/or incentive awards

in compliance with Fed. R. Civ. P. 23(h)(2).  No objections were filed.

I.      ATTORNEY'S FEES

4.      An award of reasonable attorney's fees is within the discretion of this court.  *Alexander

S. v. Boyd*, 113 F.3d 1373, 1390 (4th Cir. 1997); *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d

133, 138 (4th Cir. 1994); *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) (noting "review of the

district court's award is sharply circumscribed; we have recognized that because a district court has close

and intimate knowledge of the efforts expended and the value of the services rendered, [the fee award]

must not be overturned unless it is clearly wrong.") (internal quotation marks omitted).

5.      Class Counsel has resolved with Defendants accrued claims for attorney's fees under fee-

shifting statute of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1132(g).  Defendants have paid to Class Counsel the sum of $475,000, as memorialized in a Partial Fee

Settlement Agreement and Release (ECF No. 306), approved by this court (ECF No. 307).[1]

### A.     Percentage Of The Fund.

6.      For well over a century, the United States Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorney's fees.  *Trustees v. Greenough*, 105 U.S. 527 (1882).  The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."  In *Blum v. Stevenson*, the Supreme Court expressed its preference for determining reasonable fees as a percentage of the fund under the common fund doctrine.  *Blum v. Stevenson*, 465 U.S. 886, 900 n.16 (1984).  *See also*, Manual for Complex Litigation § 14.121 (4th ed. 2004) ("the vast majority of courts of appeals … permit or direct district courts to use the percentage-fee method in common-fund case.").

7.      Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees.  *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit);  *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 786-87 (E.D. Va. 2001); *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("[T]he percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases."); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009).

---

[1]  The Partial Fee Settlement Agreement and Release does not cover claims for fees or costs incurred for the pending appeal of the judgment as to the Subclass or proceedings post-appeal.  (ECF No. 306 at ¶2.)

8. The percentage-of-recovery method is appropriate where the recovered funds confer a substantial benefit on members of a class. *Boeing Co.*, 444 U.S. at 479. *See also, Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("an award of attorney's fees from a common fund depends on whether the attorney's specific services benefitted the fund – whether they tended to create, increase, protect or preserve the fund").

**B.    Percentage of the Fund Method under ERISA.**

9. Courts routinely grant attorney's fees as a percentage-of-recovery where the common fund arose from the settlement of claims pursuant to ERISA. *Staton v. Boeing Corp.*, 327 F.3d 938 (9th Cir. 2003); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (noting that "[c]ommon fund awards are appropriate in 401(k) and other ERISA class litigation to the same extent as in any other type of litigation"); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 456 (E.D. Pa. 1995) (noting "[a]n award of fees from [a common] fund would also further 'the policy, underlying [ERISA], of providing both prospective plaintiffs and their attorneys an economic incentive to bring meritorious ERISA cases'") (*quoting Bowen v. Southtrust Bank of Alabama*, 760 F. Supp. 889, 894 (M.D. Ala. 1991)).

10. In ERISA cases litigated to judgment, several courts have concluded that an award of common fund attorney's fees from the judgment is inappropriate due to ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). *See, e.g., Kickham Hanley, P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204 (2d Cir. 2009); *Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare & Pension Fund*, 404 F.3d 797, 804 (3rd Cir. 2005). Other courts have viewed an award of fees from an ERISA recovery, even after judgment on the merits, as proper. *See, e.g., Kifafi v. Hilton Hotels Ret. Plan*, 2013 U.S. Dist. LEXIS 163458 (D.D.C. Nov. 18, 2013) (attorney's fee award of 15% of the fund following

4

summary judgment on anti-backloading claim creating a fund worth between $103 and $152 million).

11.    In this particular case, ERISA's anti-alienation provision does not bar Class Counsel's request for common fund attorney's fees. ERISA's preclusion against "attachment" or "alienation" of pension benefits only applies while the funds are in the control of the Plan. *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). The provision no longer applies "once the benefits have been released to the properly designated beneficiary." *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000). Thus, prevailing ERISA class counsel are only precluded from "receiving fees from that portion of a common fund comprised of undistributed and/or only potential future benefits." *Humphrey v. United Way of the Tex. Gulf Coast,* 802 F. Supp. 2d 847, 862 (S.D. Tex. 2011). *See also, Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1082-1083 (10th Cir. 1994) ("[B]enefits are protected by the anti-alienation provision of section 206(d)(1) only so long as they are within the fiduciary responsibility of private plan managers.") (internal quotation marks omitted).

12.    Class Counsel herein seeks a common fund recovery of attorney's fees, costs and incentive awards to be paid from the $1,842,108 judgment in favor of the Primary Class. (ECF No. 299.) These funds are no longer within the fiduciary responsibility of Defendant Plan managers, having been tendered to and received by Class Counsel, and deposited and held in trust for the benefit of the Class, in full compliance with this court's Bifurcated Money Judgment dated November 19, 2013. (ECF No. 299.) The Bifurcated Money Judgment established ownership of the litigation funds by the class members and the funds have been "distributed" to the class through that determination and also by payment to Class Counsel.[2] Accordingly, this court will consider Class Counsel's request for common fund attorney's fees

---

[2] *See First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (finding that "funds had been 'distributed' to [plaintiff] because there had been a determination that the assets belonged to [the plaintiff].").

pursuant to *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).

     **C.**    **Barber Factors.**

    13.    Local Civil Rule 54.02(A) DSC requires that petitions for attorney's fees comply with the requirements of *Barber v. Kimbrell's, Inc., supra*. Thus, in determining reasonableness, this court is to analyze the twelve (12) factors set forth in *Barber*: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10)  the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases." *Id*. at 226 n.28.

    14.    A review of Class Counsel's efforts against the *Barber* factors confirm that Class Counsel's request is appropriate to reasonably compensate him for this excellent outcome in an extremely complex and difficult case.

    *1.*    *Time and labor required.*

    15.    ERISA class action cases typically consume an immense amount of attorney time and are litigated for years. This case is no exception, with a docket of three hundred eighteen (318) entries over seven (7) years.

    16.    In the years this litigation has been actively pursued, Class Counsel has documented a very significant investment of time and effort in litigating the case. Class Counsel has declared under penalty of perjury that he has expended approximately three thousand (3000) hours in this case without any

6

assurance of recovery.

17.     This litigation has involved heavy motions practice, with requisite research and briefing. The record demonstrates exhaustion of administrative claims and an administrative appeal creating a voluminous administrative record followed by a merits decision and a full substantive appeal to the Fourth Circuit Court of Appeals.  Remand to this court was then followed by judgments being entered.  Professor John Freeman, who often serves as an expert on attorney's fees issues, states in his Declaration submitted in support of Class Counsel's Attorney's Fee Motion: "In crediting Mr. Jackson's [time] estimate I take into account that ERISA class action cases such as this are notorious time-eaters." (ECF No. 308-2 at 10.)

18.     This court finds, based on the foregoing, that pursuit of this litigation to judgment was arduous and that extraordinary labor and effort was expended by Class Counsel. The favorable result is attributable to his diligence, determination, hard work, and skill.

        2.     *Novelty and difficulty of the questions involved.*

19.     Various courts have recognized that "ERISA law is a highly complex and quickly-evolving area of the law." *Smith v. Krispy Kreme Doughnut Corp.*, 2007 U.S. Dist. LEXIS 2392, at *5 (M.D.N.C. Jan. 10, 2007). *See also, Curry v. Contract Fabricators Profit Sharing Plan*, 744 F. Supp. 1061, 1069 (M.D. Ala. 1988), *aff'd*, 891 F.2d 842 (11th Cir. 1990) (noting that "ERISA law is extremely complex . . . .  It is almost essential that claimants have the assistance of attorneys willing to spend many hours researching their way through this legal forest.").

20.     There can be no disagreement that this litigation involved complex issues, including (1) whether the Plan's § 4.12(a) early retirement supplement was protected by ERISA's Anti-Cut Back Rule, ERISA section 204(g), 29 U.S.C. § 1054(g); (2) whether Amendment of the Plan violated the terms contained in § 10.01; (3) whether the Supplemental Benefits were accrued benefits under the Plan; (4)

7

whether the notice provisions of 29 U.S.C. § 1054(h) were complied with; (5) whether the Defendants were estopped from denying the benefits; and (6) whether simultaneous or alternative fiduciary relief could be obtained in an ERISA benefits case.

21.    The prior orders in the case reflect the complexity of the matter, as demonstrated in, for example, the court's forty-nine (49) page Order on Defendants' motion for summary judgment. (ECF No. 144.)

> 3.    *The skill required to perform the legal services properly.*

22.    The court recognizes that it takes skilled counsel to manage any class action, to analyze complicated legal claims and defenses under ERISA, and to synthesize technical pension plan-related issues that were presented in this case.  Few law firms have the experience and resources to pursue such litigation.

23.    Class Counsel handled this litigation with diligence and tenacity.  This court can only conclude from the work product evidenced in the record that Class Counsel has demonstrated an exceptional level of skill.  Without doubt, Plaintiffs' theories of recovery were not at all obvious and would not have been apparent to less experienced counsel.

24.    The skill required by Class Counsel is also reflected in the quality of opposing counsel. It has been observed that "[a]dditional skill is required when the opponent is a large, sophisticated corporation with sophisticated counsel."  *Smith*, 2007 U.S. Dist. LEXIS 2392, at *6.  Defendant URS is a large sophisticated company and it was represented by knowledgeable, ERISA-specialized counsel with Austin & Bird, LLP, whose zealous defense of the matter absolutely mandated diligent and competent representation of Plaintiffs and the Class in order for any recovery to be realized.  Local Counsel, Gallivan, White & Boyd, also represented Defendants with an exceptional level of skill.  Class Counsel's

achievement in obtaining a very substantial recovery in this action, defended by such renowned counsel, is a testament to the quality of Class Counsel's representation.

> 4.    *The attorneys' opportunity costs in pressing the litigation.*

25.    Class Counsel incurred approximately three thousand (3000) hours of attorney time over a period of more than seven (7) years and expended substantial funds to finance the case – time and resources that could otherwise have been invested in other cases.  Class Counsel is a solo practitioner and the attorney time committed to representing these classes is not insignificant given the total attorney time available for his firm to pursue all cases that it had or could have had over this time period.

> 5.    *Customary fees.*

26.    When plaintiffs' counsel accept a case on a contingency basis, it is customary to charge one-third (33.3%) or more of any amount recovered for the client.  Customary fees in complex class actions vary widely.  *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749-50 (S.D.N.Y. 1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.") (citing numerous cases).  A study conducted by the Federal Judicial Center on class actions in four districts found most fee awards ranged from 20-40% of the gross settlement amount, with the median ranging from 27-30%.  Thomas Willging, et al., *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 69* (Federal Judicial Center 1996).  These studies and surveys, for the most part, looked at settlements versus cases litigated to final judgment.

27.    Class Counsel's request for $729,000 from the $1,842,108 already distributed represents 27% of the approximately $2.7 million current and future value of the recovery and about 39.57% of the cash already paid.  With the fee contribution of Defendants, the total fee is less than 45% of the current

and future value of the recovery. These percentages fall within the range of previous awards in common benefit class actions, particularly considering this litigation was pursued through appeal and judgment.

> 6.    *The contingent nature of the matter/expectations at the outset of the litigation.*

28.    In complex and multi-year class action cases, the risks of the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney's fees. *Phillips v. Crown Cent. Petroleum Corp.*, 426 F. Supp. 1156, 1170 (D. Md. 1977). The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs, yet have lost the case despite their advocacy. *See, e.g. Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002) (reversing class certification); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) (affirming dismissal of complaint without leave to replead).

29.    Class Counsel has worked for years with no payment, undertaking the risk of walking away with no fee at all. Such "burdens are relevant circumstances" that support the requested award. *Torrisi v. Tucson Elec. Power Co.*, 83 F.3d 1370, 1377 (9th Cir. 1993). Class Counsel clearly expected to be rewarded for his efforts (if successful) in the form of a significant attorney's fee for results obtained for the benefit of the Class.

> 7.    *The time limitations imposed by the client or circumstances.*

30.    Because Defendants removed this case to Federal Court based on ERISA, there have been regular deadlines imposed by the Federal Rules of Civil Procedure and the local rules of court. In this regard, "priority work that delays the lawyer's other work is entitled to some premium." *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714, 718  (5th Cir. 1974).

8.    *The amount in controversy and the results obtained.*

31.    The results achieved here are exceptional.  The recovery allows for full recovery of 100% of the early retirement supplement of $700 per month to all early retirees who meet the requirements of the Plan, plus past due payments with interest.

32.    There were numerous obstacles in this case to a recovery for the Class.  Despite these roadblocks, Class Counsel was able to obtain $2.7 million in present and future recovery for the Class, with all eligible Class members who have not taken early retirement restored to their rights to receive the $700 per month supplement, if they comply with the requirements of the Plan.

33.    It is clear to this court that Class Counsel undertook enormous obligations and responsibilities in this litigation and produced a significant result that supports the requested fee award.

9.    *The experience, reputation and ability of counsel.*

34.    Attorneys who intend to successfully prosecute class-wide, statutorily-based claims for pension benefits must not only have the litigation skills required for any complex class action, but also a good command of significant portions of ERISA, the Internal Revenue Code, regulations and regulatory guidance issued by the Department of the Treasury and the IRS, and their interrelationships.  These skills and knowledge base are possessed by a very small number of plaintiffs' firms.  Judge Kravitz of the District of Connecticut recently summed up as part of his one hundred twenty-two (122) page decision in *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288 (D. Conn. 2008):  "ERISA, and the regulations under it, are often lamentably obscure – to describe them as a tangled web does not do them justice."  *Id.* at 296.

35.    This court takes note of Professor John Freeman's statement: "Mr. Jackson is well known to me.  I know him as a creative, hard-working, thoughtful practitioner who gravitates toward complex litigation and has enjoyed some truly excellent results over the years.  As reflected by the record

11

in this case, he brought to the battle a strong skill set, and laudable tenacity and determination." (ECF No. 308-2 at 14 ¶ 28.)

> 10. *The undesirability of the case.*

36.    The risks undertaken in pursuing this litigation were considerable.  While most ERISA class actions are difficult to prosecute, this case was one of unusual complexity and risk and the risk of non-recovery escalated tremendously when Defendants were granted summary judgment.  Class Counsel would have anticipated that whichever law firm came to represent Defendants would be well-financed and well-versed in ERISA.  The lawyers at Austin & Bird LLP have spent years litigating on behalf of ERISA plans. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 635-36 (D. Colo. 1976) (giving consideration to the reputations of defense counsel in determining a fee award as their stature reflects the challenges faced by the plaintiffs' attorneys).

37.    Concerning the undesirability of the case, Professor Freeman states: "Making this case difficult and to some extent undesirable are the facts that it is: (1) a time-eater; (2) a tough case where fee collection, if any, promises to be long-delayed; (3) a case destined to be litigated in federal court, which is a forum some lawyers choose to avoid; and (4) a case that, predictably, will draw to it sophisticated, well-funded defense counsel ready, willing, and able to assert every conceivable argument on their client's behalf.  Also, class counsel was forced to deal with the practical economics of prosecuting a complex ERISA class action matter."  (ECF No. 308-2 at 14 ¶ 29.)

38.    Class Counsel undertook responsibilities in this litigation which would have deterred many firms.

11.    *Nature and length of the professional relationship between attorney and the client.*

39.    Class counsel states that he did not know  Plaintiff Noorali "Sam" Savani or Plaintiff Robert P. Taylor, Jr., prior to this case.

12.    *Attorney's fees awarded in similar cases.*

40.    Class Counsel requests a common fund fee that is 27% of the total value of the recovery. It equates to about 39.57% of the available, recovered fund.  This requested amount falls within the normal ranges of fees awarded, giving due consideration to the fact that Defendants have already contributed $475,000.  *See, e.g., In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032 (D. Kan. July 27, 2006) (awarding fee of 30% of $9.25 million settlement); *Furstenau v. AT&T Corp.*, No. 02-5409 (D.N.J. Oct. 14, 2005) (awarding fee of 29% of $29 million settlement); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-7921 (N.D. Ill. Nov. 22, 2004) (awarding fee of 30% of $46.5 million settlement); *Blyler v. Agee*, No. 97-00332 (D. Idaho Aug. 25, 2004) (awarding fee of 30% of $21 million settlement); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCooper, LLP*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (awarding fee of 30% of $10.15 million settlement); *Moench v. Robertson*, No. 92-4829, 1996 U.S. Dist. LEXIS 21898 (D.N.J. Nov. 1, 1996) (awarding fee of 35% of $700,000 settlement); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464 (S.D. Ohio Mar. 9, 2007) (ERISA case awarding 29% of $35 million common fund); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 U.S. Dist. LEXIS 55836, at *9 (E.D. Mich. June 27, 2006) (28.5% of $28 million fund, plus interest); *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-HCM, 2003 WL 21277124, at *15 (N.D. Okla. May 28, 2003) (25% of $36 million common fund); *In re Aetna Sec. Litig.*, MDL 1219, 2001 U.S. Dist. LEXIS 68, at *36, 43-44 (E.D. Pa. Jan. 4, 2001) (awarding 30% of settlement, in a three year old case).  *See also*

*Williams v. MGM-Pathe Comm. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33.3% awarded); *In re AMERCO Sec. Litig.*, No. 04-2182-PHX-RJB (D. Ariz. Nov. 3, 2006) (30%). *In re MRRM, P.A.*, 404 F.3d 863 (4th Cir. 2005) (fee request of 28.75% of $70 million settlement awarded as class counsel fees); *In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8ᵗʰ Cir. 2002) (attorney's fees of 36% affirmed); *Waters Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (award of $13.3 million in attorney's fees from $40 million settlement fund - 33-1/3% of total recovery); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) (attorney's fees award of approximately 31% of settlement affirmed); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133-1141 (W.D. La. 1997) (attorney's fees of 36% of $127 million settlement); *Vizcaino v. Microsoft*, *supra* at 1047 (class action; the rule of thumb is that an award of fees of 25% to 30% is generally appropriate); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285-86 (D. Minn. 1997) (awarding one-third attorney's fees from $86 million settlement).

41.     A comparison of the amount sought to the time and work expended also reveals that the request falls well below the low end of the range produced by the lodestar analysis below, with no enhancement for risk.  Based upon fee awards in other class cases cited herein, the fee request is fair and reasonable.

42.     Based on the foregoing, the Court concludes that each of the *Barber* factors support the reasonableness of the requested fee award.

### D.    Lodestar Cross-check.

43.     A court may choose to "cross-check" the results of a percentage-fee a ward against the attorney's "lodestar."  *See, e.g., The Kay Co., et al. v. Equitable Prod. Co.*, 2010 U.S.Dist. LEXIS 118256, at *14 (S.D. W. Va. Nov. 5, 2010) ("I will also apply the lodestar cross-check as an element of

objectivity in my analysis."). The "lodestar" is derived by multiplying the attorney and professional hours devoted to a case by the timekeepers' individual billing rates. A risk multiplier is then applied. The lower the multiplier, the more reasonable the fees sought, i.e., a multiplier of two (2) is preferable to a multiplier of four (4), and so forth.

44.    The "actual rate that counsel can command on the market is itself highly relevant proof of the prevailing community rate." *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 404 (D.C. Cir. 1986) (citation and internal quotation marks omitted). Class Counsel has submitted his Declaration summarizing his efforts and the time expended, as well as a Declaration by Professor John Freeman, whose expert testimony has been accepted by District Courts in the region on the matter of reasonableness of attorney's fees awards. (*See* ECF Nos. 308-2, 308-3.) Professor Freeman's Declaration documents prevailing rates charged for complex litigation:

> In my experience the customary fee for services by experienced counsel in a case like this is in the range of $500 to $650 per hour. By this I mean that if the Plaintiffs' counsel in this case were retained by a client with sufficient means, in a similarly complex ERISA matter, a fair and reasonable market rate for their legal services would be $500-$650.00 per hour. For example, in the ERISA case of George v. Duke Energy Retirement Cash Balance Plan, D.S.C., Case No.: 8:06-CV-00373-JMC, this Court credited expert testimony of Gary Mauney (ECF No. 374-10 at p. 7) that a fee range of $500 to $650 would be reasonable. (ECF No. 389 at p. 20.) In King v. American General Finance Inc., Orangeburg Cty. Common Pleas, Case No. 96-CP-38-595, a case in which I participated as an expert, Judge Buckner found that a reasonable lodestar rate for participating counsel was $600 per hour. Several of those lawyers in King have been co-counsel with Mr. Jackson in other cases; i.e., he has similar standing and credentials. And in the Saunders case cited earlier, Judge Duffy found that an appropriate hourly rate for Mr. Bell, lead counsel in the case, was $600 per hour. My opinion in this case is that valuing Mr. Jackson's time at $600 per hour is fair and reasonable.... Under the circumstances, I conclude the fee sought clearly falls within the range of fees customarily charged in complex class action cases such as this one."

(ECF No. 308-2 at 12 ¶¶ 22-23.)

45.    The record shows that Class Counsel has devoted an estimated three thousand (3000)

hours of attorney time in this case. The common fund fee requested, combined with Defendants' attorney's fee contribution, works out to about $400 per hour, far less than the lowest end of the range testified to by Professor Freeman for complex litigation of this sort of $500/hr., with no enhancement for risk. This also reflects an hourly rate that is less than the actual market rate of $450 per hour Class Counsel noted in his Declaration as his prevailing rate for typical, non-complex hourly work. The "actual rate that counsel can command on the market is itself highly relevant proof of the prevailing community rate." *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 404 (D.C. Cir. 1986).

46.     Given the extreme difficulty of this case, the time expended, the seven-year duration through to a full adjudication on the merits, and the outstanding result, Class Counsel's fee request is reasonable. The lodestar analysis reflects that the value of the work put in by Class Counsel on this case exceeds the fee sought under every measure.

47.     In summary, the Court finds that Class Counsel's request for fees is unopposed by Defendants, not subject to any objection by any class member, is supported by the *Barber* factors, is well-supported by a lodestar cross-check, and is comparable to fee awards in other class cases given the complexity of the litigation, the duration, and the risks undertaken. Accordingly, this Court finds and concludes that Class Counsel's request for an award of attorney's fees of $729,000 from the class recovery is fair and reasonable given the results, risks, difficulty, complexity and magnitude of the litigation, and the highly specialized expertise, time and substantial resources required to prosecute it successfully.

## II.     LITIGATION COSTS AND EXPENSES

48.     Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Strang v.*

*JHM Mortg. Secs. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995).

49.    Class Counsel has incurred $43,944.40 in expenses.  Because these expenses were advanced with no guarantee of recovery, Class Counsel had a strong incentive to keep them to a reasonable level.  Class Counsel has provided the Court with a summary of the costs and expenses advanced, which costs and expenses appear reasonable.  The majority of the costs were expended on expert witnesses/consultants whose assistance was required to develop and pursue the claims in the litigation against strong opposition.  No class member has filed an objection to the amount or categories of costs documented.

50.    The court finds that the $43,944.40 in litigation costs and expenses incurred by Class Counsel have been adequately documented and were reasonably incurred for the benefit of the Class. The court finds that reimbursement of costs and expenses in this amount from the class recovery is reasonable and justified.

III.    NAMED PLAINTIFF INCENTIVE AWARDS

51.    The intent of "incentive awards" (also known as "case contribution payments") is to reimburse and compensate the Named Plaintiffs and/or Class Representatives for their time and efforts expended on behalf of the Class.  Plaintiffs have requested that the court approve an incentive award of $40,000 to Class Representative Noorali "Sam" Savani.

52.    A substantial incentive award is appropriate in this complex ERISA case given the benefits accruing to the entire class in part resulting from Mr. Savani's efforts. *Kifafi v. Hilton Hotels Ret. Plan*, 2013 U.S. Dist. LEXIS 163458, at *43 n. 9. (D.D.C. Nov. 18, 2013) ("The whole plaintiff class benefitted from the lawsuit to which Mr. Kifafi significantly contributed and thus the whole class should share in contributing to the incentive award.")

17

53.    The amount requested is in line with amounts that have been approved by courts in other cases. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 2008 U.S. Dist. LEXIS 569, at *23 (E.D. Pa. Jan. 3, 2008) (approving a $30,000 award for each class representative); *McBean v. City of N.Y.*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (stating incentive awards of $25,000-$30,000 are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000); *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005) ($30,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) ($50,000); *Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001) ($7,500 to $40,000).  No class member has filed an objection to the incentive award sought.

54.    The record demonstrates significant time and effort expended by Mr. Savani in representing the Class.  He was willing, in a small industry, to serve as Class Representative.

55.    "Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing."  *Veronica Robinson v. Tr. Council of Wateree Cmty. Actions, Inc,* CA: 3:11-CV-00313-CMC, 2012 U.S. Dist. LEXIS 129069, at * 31-32 (D.S.C. Sept. 10, 2012) *(quoting Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D. W. Va. 2010)).

56.    The court finds that the incentive award sought for Mr. Savani in the amount of $40,000 is reasonable and should be approved.

Based upon the foregoing findings of fact and conclusions of law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Class Counsel is hereby awarded attorney's fees in the amount of $729,000 and reimbursement of costs and expenses of litigation in the amount of $43,944.40, and Class Representative Noorali "Sam" Savani" is hereby awarded an incentive award in the amount of $40,000, all payable from the judgment fund of $1,842,108.  Class

18

Counsel is hereby authorized to make distributions from the fund held in trust for the attorney's fees, reimbursement of costs and expenses, and the incentive award, and to distribute the balance to class members on a *pro rata* percentage basis, together with a statement showing their net proceeds after deductions for the amounts awarded.

**IT IS SO ORDERED**.

United States District Judge

January 15, 2014
Greenville, South Carolina