UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| NOORALI "SAM" SAVANI and | ) | |
| ROBERT P. TAYLOR, Jr. | ) | |
| individually and on behalf of others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| URS PROFESSIONAL SOLUTIONS LLC | ) | |
| formerly WASHINGTON SAFETY | ) | |
| MANAGEMENT SOLUTIONS, LLC, | ) CIVIL ACTION NUMBER: 1:06-cv-02805-JMC | |
| formerly WESTINGHOUSE SAFETY | ) | |
| MANAGEMENT SOLUTIONS, LLC, | ) | |
| and WASHINGTON SAFETY | ) | |
| MANAGEMENT SOLUTIONS, LLC's | ) | |
| PENSION PLAN, now URS | ) | |
| PROFESSIONAL SOLUTIONS | ) | |
| PENSION PLAN formerly WSMS | ) | |
| PENSION PLAN, | ) | |
| WASHINGTON GROUP | ) | |
| INTERNATIONAL, INC. now known as | ) | |
| URS ENERGY & CONSTRUCTION, INC. | ) | |
| and ROGER ALLEN, | ) | |
| JULIE TSCHIDA BROWN, | ) | |
| DAVE HOLLAN, AND DELOYD CAZIER | ) | |
| as TRUSTEES and MEMBERS of | ) | |
| the BENEFITS now | ) | |
| ADMINISTRATIVE COMMITTEE | ) | |
| of URS PROFESSIONAL | ) | |
| SOLUTIONS PENSION PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER AWARDING ATTORNEY'S FEES, APPROVING COSTS AND NAMED PLAINTIFF INCENTIVE AWARD

This matter comes before the court on Plaintiffs' Unopposed Motion for Approval of

Supplemental Class Counsel Attorney's Fees, Costs and Incentive Awards for Named Plaintiff filed

1

on May 21, 2015. (ECF No. 332.) The court conducted a hearing on these issues, under Fed. R. Civ. P. 23(c), on July 28, 2015. (ECF No. 339.) The court has reviewed the materials submitted by the parties and has heard arguments and evidence presented at the hearing. For the reasons cited herein and the evidence presented, the court finds and concludes as follows:

1. As a preliminary matter, this court has jurisdiction over the subject matter of this action, the parties, and the Class. Previously, Class Counsel moved, and this Honorable Court granted an Order, awarding attorney's fees to be paid from the litigation proceeds recovered for the Class and an incentive award for the Class Representative, Noorali "Sam" Savani, who represented the Primary Class. As noted in the Order granting the prior award, the Partial Fee Settlement Agreement and Release did not cover claims for fees or costs incurred for the pending appeal of the Judgment as to the Subclass or proceedings post-appeal. (ECF No. 323.) The award for attorney's fees for representing the Primary Class through a final Judgment was 39.57% of the settlement cash that had been deposited with Class Counsel. (ECF No. 323 ¶ 27 at 9.) Now the appeal for the Subclass is final, the case has been remanded to this court, and past due payments have been deposited for past due benefits with Class Counsel; so this application for additional supplemental attorney's fees, costs, and an incentive fee for Robert P. Taylor, Jr., the named representative for the Subclass, is ripe for decision.

2. Notice of the requested award of attorney's fees, cost reimbursement, and Named Plaintiff incentive award was directed to Subclass members in a reasonable manner through first-class mailing to their most recent known addresses on May 29, 2015 and complies with Fed. R. Civ. P. 23(h)(1).

3. All Subclass members who still have an interest in the motion as vested members[1] in the pension plan at issue were given the opportunity to object to fees, costs and/or incentive awards in compliance with Fed. R. Civ. P. 23(h)(2). No Subclass member appeared or objected.

## I.     ATTORNEY'S FEES

4. An award of reasonable attorney's fees is within the discretion of this court. *Alexander S. v. Boyd,* 113 F.3d 1373, 1390 (4th Cir. 1997); *Colonial Williamsburg Found. v. Kittinger Co.,* 38 F.3d 133, 138 (4th Cir. 1994); *Plyler v. Evatt*, 902 F.2d. 273, 277-78 (4th Cir. 1990) (noting "review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, [the fee award] must not be overturned unless it is clearly wrong.")  (Internal quotation marks omitted).

5. Class Counsel has resolved with Defendants accrued claims for attorney's fees under fee-shifting status of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(g).  Defendants have paid to Class Counsel the sum of $60,000.00 as memorialized in a Partial Fee Settlement Agreement and Release which was approved by this court (ECF No. 329). Additionally, Defendants have deposited into the escrow account of Plaintiffs' Class counsel as past-due benefits with interest for those members of the Subclass due retroactive benefits the sum of

---

1. Howard L. Day is listed as a Subclass member whose mail, according to the presentation of Class counsel, was returned. However according to the Subclass member spreadsheet filed in this action declared under oath as accurate by Defendants' representative, this Subclass member was terminated before he met the pension requirements of 50 years of age and 15 years of service and was not a vested member in the pension plan.

$956,574.00[2]. It is from this latter fund that Plaintiffs' Class counsel seeks 39.57% as a percentage of the fund as attorney's fees, the payment of costs, and an incentive fee for the Subclass representative.

### A.    Percentage Of The Fund.

6.    For well over a century, the United States Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorney's fees. *Trustees v. Greenough*, 105 U.S. 527 (1881). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

7.    Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit); *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 786-87 (E.D. Va. 2001); *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009).

8.    The percentage-of-recovery method is appropriate where the recovered funds confer

---

2. This amount, and the total future benefits available to Subclass members differs slightly from the original motion because the parties determined subsequent to the motion that Mr. Roy S. Beck would be given the opportunity to chose retroactive early retirement, which he did; and Srikant Mehta, after being given an opportunity to retroactively chose early retirement, did not choose to retire early.

a benefit on members of a class. *Boeing Co.*, 444 U.S. at 479; *see also Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund – whether they tended to create, increase, protect or preserve the fund").

      **B.**    **Percentage of the Fund Method under ERISA.**

     9.    Courts routinely grant attorney's fees as a percentage-of-recovery where the common fund arose from the settlement of claims pursuant to ERISA, 29 U.S.C. §§ 1101, *et seq. Staton v. Boeing Corp.*, 327 F.3d 938 (9th Cir. 2003); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (noting that "[c]ommon fund awards are appropriate in 401(k) and other ERISA class action litigation to the same extent as in any other type of litigation"); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 456 (E.D. Pa. 1995) (noting "[a]n award of fees from [a common] fund would also further 'the policy, underlying [ERISA], of providing both prospective plaintiffs and their attorneys an economic incentive to bring meritorious ERISA cases'") (*quoting Bowen v. Southtrust Bank of Ala.*, 760 F. Supp. 889, 894 (M.D. Ala. 1991)).

     10.    In ERISA cases litigated to judgment, several courts have concluded that an award of common fund attorney's fees from the judgment is inappropriate due to ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). *See, e.g., Kickham Hanley, P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204 (2d Cir. 2009); *Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare & Pension Fund*, 404 F.3d 797, 804 (3d Cir. 2005). Other courts have viewed an award of fees from an ERISA recovery, even after judgment on the merits, as proper. *See, e.g., Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88 (D.D.C. Nov. 18, 2013) (attorney's fee award of 15% of the fund following summary judgment on anti-backloading claim creating a fund worth between $ 103 and

5

$ 152 million).

11.    In this particular case, ERISA's anti-alienation provision does not bar Class Counsel's request for common fund attorney's fees.  ERISA's preclusion against "attachment" or "alienation" of pension benefits only applies while the funds are in the control of the Plan.  *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).  The provision no longer applies "once the benefits have been released to the properly designated beneficiary."  *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000).  Thus, prevailing ERISA class counsel are only precluded from "receiving fees from that portion of a common fund comprised of undistributed and/or only potential future benefits." *Humphrey v. United Way of the Tex. Gulf Coast,* 802 F. Supp. 2d 847, 862 (S.D. Tex. 2011); *see also Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1082-1083 (10th Cir. 1994) ("'[B]enefits are protected by the anti-alienation provision of section 206(d)(1) only so long as they are within the fiduciary responsibility of private plan managers.").

12.    Class Counsel herein seeks a common fund recovery of attorney's fees, costs and incentive awards to be paid from the past benefits judgment in favor of the Subclass.  (ECF No. 330 and 331.)  These funds are no longer within the fiduciary responsibility of Defendant Plan managers, having been tendered to and received by Class Counsel, and deposited and held in trust for the benefit of the Subclass, in full compliance with this court's Second Amended Subclass Money Judgment dated May 14, 2015.  (ECF No. 331.)  The Second Amended Subclass Money Judgment established ownership of the litigation funds by the Subclass members and the funds have been

"distributed" to the Subclass through that determination and also by payment to Class Counsel.[3] Accordingly, this court will consider Class Counsel's request for common fund attorney's fees pursuant to *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).

   **C.    Barber Factors.**

13.    Local Rule 54.02(A) (D.S.C.) requires that petitions for attorney's fees comply with the requirements of *Barber v. Kimbrell's, Inc., supra*.  Thus, in determining reasonableness, this court is to analyze the twelve factors set forth in *Barber*: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10)  the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."  *Id*. at 226 n.28.

14.    A review of Class Counsel's efforts against the *Barber* factors confirms that Class Counsel's request is appropriate to reasonably compensate him for this excellent outcome in an extremely complex and difficult case.

   *1.    Time and labor required.*

15.    ERISA class action cases typically consume an immense amount of attorney time and

_____

3. *See First Trust Corp. v. Bryant*, 410 F.3d 842, 850 n.3 (6th Cir. 2005) (finding that "funds had been 'distributed' to [plaintiff] because there had been a determination that the assets belonged to [the plaintiff]."

are litigated for years.  This case is no exception, with a docket of over three hundred thirty (330) entries over nine (9) years.

16.     In the years this litigation has been actively pursued, Class Counsel has documented a very significant investment of time and effort in litigating the case.   Class Counsel has declared under penalty of perjury that he has expended approximately three thousand, two hundred sixty (3,260) hours in this case without any assurance of recovery.

17.     This litigation has involved heavy motions practice, with requisite research and briefing.  The record demonstrates exhaustion of administrative claims and an administrative appeal creating a voluminous administrative record followed by a merits decision and two full substantive appeals to the Fourth Circuit Court of Appeals.  Prof. John Freeman, who often serves as an expert on attorney's fees issues, states in his Declaration submitted in support of Class Counsel's Attorney's Fee Motion: "In crediting Mr. Jackson's [time] estimate I take into account that ERISA class action cases such as this are notorious time-eaters."  (ECF No. 308-2 at 10.)

18.     This court finds, based on the foregoing, that pursuit of this litigation to two final judgments was arduous and that extraordinary labor and effort was expended by Class Counsel. The favorable result is attributable to his diligence, determination, hard work, and skill.

    2.    *Novelty and difficulty of the questions involved.*

19.     Various courts have recognized that "ERISA law is a highly complex and quickly-evolving area of the law."  *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 U.S. Dist. LEXIS 2392, at *5 (M.D.N.C. Jan. 10, 2007); *see also Curry v. Contract Fabricators Profit Sharing Plan*, 744 F. Supp. 1061, 1069 (M.D. Ala. 1988), *aff'd*, 891 F.2d 842 (11th Cir. 1990) (noting that "ERISA law is extremely complex . . . . It is almost essential that claimants have the

assistance of attorneys willing to spend many hours researching their way through this legal forest.").

20.    There can be no disagreement that this litigation involved complex issues, including (1) whether the Plan's § 4.12(a) early retirement supplement was protected by ERISA's Anti-Cut Back Rule, ERISA section 204(g), 29 U.S.C. § 1054(g); (2) whether Amendment of the Plan violated the terms contained in §10.01; (3) whether the Supplemental Benefits were accrued benefits under the Plan; (4)  whether the notice provisions of 29 U.S.C. § 1054(h) were complied with; (5) whether Defendants were estopped from denying the benefits; (6) whether simultaneous or alternative fiduciary relief could be obtained in an ERISA benefits case; and (7) whether the freeze of the Plan excused paying members of the Subclass.

21.    The prior orders in the case reflect the complexity of the matter, as demonstrated in the court's 49-page Order on Defendants' Motion for Summary Judgment.  (ECF No. 144) and the Summary Judgment Order for the Subclass (ECF No. 228).

> 3.    *The skill required to perform the legal services properly.*

22.    The court recognizes that it takes skilled counsel to manage any class action, to analyze complicated legal claims and defenses under ERISA, and to synthesize technical pension plan-related issues that were presented in this case.  Few law firms have the experience and resources to pursue such litigation.

23.    Class Counsel handled this litigation with diligence and tenacity.  This court can only conclude from the work product evidenced in the record that Class Counsel has demonstrated an exceptional level of skill.  Without doubt, Plaintiffs' theories of recovery were not at all obvious and would not have been apparent to less experienced counsel.

9

24.    The skill required by Class Counsel is also reflected in the quality of opposing counsel. It has been observed that "[a]dditional skill is required when the opponent is a sophisticated corporation with sophisticated counsel." *Smith*, 2007 U.S. Dist. LEXIS 2392, at *6. URS is a large sophisticated company and it was represented by knowledgeable, ERISA-specialized counsel with Austin & Bird, LLP, whose zealous defense of the matter absolutely mandated diligent and competent representation of Plaintiffs and the Subclass in order for any recovery to be realized. Local Counsel, Gallivan, White & Boyd, also represented Defendants with an exceptional level of skill.  Class Counsel's achievement in obtaining a very substantial recovery in this action, defended by such renowned counsel, is a testament to the quality of Class Counsel's representation.

        4.    *The attorney's opportunity costs in pressing the litigation.*

25.    Class Counsel incurred approximately three thousand, two hundred sixty (3,260) hours of attorney time over a period of more than nine (9) years and expended substantial funds to finance the case – time and resources that could otherwise have been invested in other cases. The attorney time committed to representing these cases/class action lawsuits is not insignificant given the total attorney time available for his firm to pursue all cases that it had or could have had over this time period.

        5.    *Customary fees.*

26.    When plaintiffs' counsel accepts a case on a contingency basis, it is customary to charge one-third (33.3%) or more of any amount recovered for the client.  Customary fees in complex class actions vary widely. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749-50 (S.D.N.Y. 1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.") (citing numerous cases).  A study conducted by the Federal

10

Judicial Center on class actions in four districts found most fee awards ranged from 20-40% of the gross settlement amount, with the median ranging from 27-30%. Thomas Willging, et al., *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 69* (Federal Judicial Center 1996). These studies and surveys, for the most part, looked at settlements versus cases litigated to final judgment.

27.     Class Counsel's request for 39.57% of the cash paid represents approximately 16.88% of the potential $ 2.24 million current and future value of the recovery. With the fee contribution of Defendants, $60,000.00, the total fee is still a small portion of the total current and future value of the recovery. These percentages fall within the range of previous awards in common benefit class actions, particularly considering this litigation was pursued through appeal and judgment.

>    6.     *The contingent nature of the matter/expectations at the outset of the litigation.*

28.     In complex and multi-year class action cases, the risks of the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney's fees. *Phillips v. Crown Cent. Petroleum Corp.*, 426 F. Supp. 1156, 1174 (D. Md. 1977). The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs, yet have lost the case despite their advocacy. *See, e.g. Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002) (reversing class certification); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) (affirming dismissal of complaint without leave to replead).

29.     Class Counsel has worked for years undertaking the risk of walking away with no fee at all. Such burdens are relevant circumstances that support the requested award. *Torrisi v.*

*Tucson Elec. Power Co.*, 83 F.3d 1370, 1377 (9th Cir. 1993). Class Counsel clearly expected to be rewarded for his efforts (if successful) in the form of a significant attorney's fee for results obtained for the benefit of the Class.

> 7.    *The time limitations imposed by the client or circumstances.*

30.    Because Defendants removed this case to federal court based on ERISA, there have been regular deadlines imposed by the Federal Rules of Civil and Appellate Procedure and the local rules of court. In this regard, "priority work that delays the lawyer's other work is entitled to some premium." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718  (5th Cir. 1974).

> 8.    *The amount in controversy and the results obtained.*

31.    The results achieved here are exceptional. The recovery allows for full recovery of 100% of the early retirement supplement of $700.00 per month to all early retirees who meet the requirements of the Plan, plus past due payments with interest.

32.    There were numerous obstacles in this case to a recovery for the Class. Despite these roadblocks, Class Counsel was able to obtain $ 2.7 million in present and future recovery for the Class, and another $ 2.2 million for the Subclass with all eligible Class and Subclass members who have not taken early retirement restored to their rights to receive the $700.00 per month supplement, if they comply with the requirements of the Plan.

33.    It is clear to this court that Class Counsel undertook enormous obligations and responsibilities in this litigation and produced a significant result that supports the requested fee award.

9.     *The experience, reputation and ability of counsel.*

34.     Attorneys who intend to successfully prosecute class-wide, statutorily-based claims for pension benefits must not only have the litigation skills required for any complex class action, but also a good command of significant portions of ERISA, the Internal Revenue Code, regulations and regulatory guidance issued by the Department of the Treasury and the IRS, and all their corresponding interrelationships.   Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate such claims.   Judge Kravitz of the District of Connecticut recently summed up as part of his 122-page decision in *Amara v. Cigna Corp.*:  "ERISA, and the regulations under it, are often lamentably obscure–to describe them as a tangled web does not do them justice." 534 F. Supp. 2d 288, 296 (D. Conn. 2008).

35.     This court takes note of Prof. John Freeman's statement: "Mr. Jackson is well known to me.  I know him as a creative, hard-working, thoughtful practitioner who gravitates toward complex litigation and has enjoyed some truly excellent results over the years.  As reflected by the record in this case, he brought to the battle a strong skill set, and laudable tenacity and determination."  (ECF No. 308-2 at 14 ¶ 28.)

10.     *The undesirability of the case.*

36.     The risks undertaken in pursuing this litigation were considerable.  While most ERISA class actions are difficult to prosecute, this case was one of unusual complexity and risk and the risk of non-recovery escalated tremendously when Defendants were granted summary judgment. Class Counsel would have anticipated that whichever law firm came to represent Defendants would be well-financed and well-versed in ERISA.  The lawyers at Austin & Bird LLP have spent years litigating on behalf of ERISA plans. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo.

13

1976) (giving consideration to the reputations of defense counsel in determining a fee award as their stature reflects the challenges faced by the plaintiffs' attorneys).

37.     Concerning the undesirability of the case, Prof. Freeman states, "Making this case difficult and to some extent undesirable are the facts that it is: (1) a time-eater; (2) a tough case where fee collection, if any, promises to be long-delayed; (3) a case destined to be litigated in federal court, which is a forum some lawyers choose to avoid; and (4) a case that, predictably, will draw to it sophisticated, well-funded defense counsel ready, willing, and able to assert every conceivable argument on their client's behalf.  Also, class counsel was forced to deal with the practical economics of prosecuting a complex ERISA class action matter." (ECF No. 308-2 at 14 ¶ 29.) Additionally, the Subclass representative, Robert P. Taylor, Jr., testified that prior to knowing Mr. Jackson, he and other members of the Class had sought representation by competent counsel but could not locate any lawyers to do so.

38.     Class Counsel undertook responsibilities in this litigation which would have deterred many firms.

>           *11.     Nature and length of the professional relationship between attorney and the client.*

39.     Class counsel states that Mr. Taylor was not known previous to this case.  Both the named Plaintiffs and many of the individual Class Members have assisted Class Counsel in the pursuit of the litigation. There is no reason to suggest that the class representatives are dissatisfied with the representation they received here.

*12.     Attorney's fees awarded in similar cases.*

40.     Class Counsel requests a common fund fee of 39.57% of the total cash value of the recovery for the Subclass.  It equates to about 16.88% of the total recovered amounts of past and future benefits.  The percentage requested falls within the normal range of fees awarded, giving due consideration to the fact that Defendants have already contributed $60,000.00 for the Subclass.  *See, e.g., In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032, 2006 WL 6909134 (D. Kan. July 27, 2006) (awarding fee of 30% of $ 9.25 million settlement); *Furstenau v. AT&T Corp.*, No. 02-5409, 2004 WL 5582592 (D.N.J. Sept. 3, 2004) (awarding fee of 29% of $ 29 million settlement); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-7921 (N.D. Ill. Nov. 22, 2004) (awarding fee of 30% of $ 46.5 million settlement); *Blyler v. Agee*, No. 97-00332 (D. Idaho Aug. 25, 2004) (awarding fee of 30% of $ 21 million settlement); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCooper, LLP*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (awarding fee of 30% of $ 10.15 million settlement); *Moench v. Robertson*, No. 92-4829, 1996 U.S. Dist. LEXIS 21898 (D.N.J. Nov. 1, 1996) (awarding fee of 35% of $700,000 settlement); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464 (S.D. Ohio Mar. 9, 2007) (ERISA case awarding 29% of $ 35 million common fund); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 U.S. Dist. LEXIS 55836, at *9 (E.D. Mich. June 27, 2006) (28.5% of $ 28 million fund, plus interest); *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-HCM, 2003 WL 21277124, at *15 (N.D. Okla. May 28, 2003) (25% of $ 36 million common fund); *In re Aetna Sec. Litig.*, MDL 1219, 2001 U.S. Dist. LEXIS 68, at *36, 43-44 (E.D. Pa. Jan. 4, 2001) (awarding 30% of settlement, in a three year old case); *see also Williams v. MGM-Pathe Comm. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33.3% awarded); *In re AMERCO Sec. Litig.*, No. 04-2182-PHX-RJB (D. Ariz. Nov. 3, 2006) (30%). *In re*

*MRRM, P.A.*, 404 F.3d 863 (4th Cir. 2005) (fee request of 28.75% of $ 70 million settlement awarded as class counsel fees); *In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) (attorney's fees of 36% affirmed); *Waters Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (award of $ 13.3 million in attorney's fees from $ 40 million settlement fund - 33-1/3% of total recovery); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) (attorney's fees award of approximately 31% of settlement affirmed); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133-1141 (W.D. La. 1997) (attorney's fees of 36% of $ 127 million settlement); *Vizcaino v. Microsoft*, *supra* at 1047 (class action; the rule of thumb is that an award of fees of 25% to 30% is generally appropriate); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285-86 (D. Minn. 1997) (awarding one-third attorney's fees from $ 86 million settlement).

41.     A comparison of the amount sought to the time and work expended also reveals that the request falls well below the low end of the range produced by the lodestar analysis below, with no enhancement for risk.  Based upon fee awards in other class cases cited herein, the fee request is fair and reasonable.

42.     Based on the foregoing, the court concludes that each of the *Barber* factors supports the reasonableness of the requested fee award.

**D.     Lodestar Cross-check.**

43.     A court may choose to "cross-check" the results of a percentage-fee award against the attorney's "lodestar."  *See, e.g., The Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 463-64 (S.D. W. Va. Nov. 5, 2010) ("I will also apply the lodestar cross-check as an element of objectivity in my analysis.").  The "lodestar" is derived by multiplying the attorney and professional

16

hours devoted to a case by the timekeepers' individual billing rates. A risk multiplier is then applied. The lower the multiplier, the more reasonable the fees sought, *i.e.*, a multiplier of 2 is preferable to a multiplier of 4, and so forth.

44.      The "actual rate that applicant's counsel can command on the market is itself highly relevant proof of the prevailing community rate." *Bebchick v. Wash. Metro. Area Transit Com.*, 805 F.2d 396, 404 (D.D.C. 1986).   Class Counsel has submitted his Declaration summarizing his efforts and the time expended, as well as a Declaration by Prof. John Freeman, whose expert testimony has been accepted by district courts in the region on the matter of reasonableness of attorney's fee awards.   Prof. Freeman's Declaration documents prevailing rates charged for complex litigation:

> In my experience the customary fee for services by experienced counsel in a case like this is in the range of $500 to $650 per hour.  By this I mean that if the Plaintiffs' counsel in this case were retained by a client with sufficient means, in a similarly complex ERISA matter, a fair and reasonable market rate for their legal services would be $500-$650.00 per hour.  For example, in the ERISA case of George v. Duke Energy Retirement Cash Balance Plan, D.S.C., Case No.: 8:06-CV-00373-JMC, this Court credited expert testimony of Gary Mauney [Dkt. No. 374-10 at p. 7.]  that a fee range of $500 to $650 would be reasonable.  [Dkt. No. 389 at p. 20.].
>  In King v. American General Finance Inc., Orangeburg Cty. Common Pleas, Case No. 96·CP-38-595, a case in which I participated as an expert, Judge Buckner found that a reasonable lodestar rate for participating counsel was $600 per hour.  Several of those lawyers in King have been co-counsel with Mr. Jackson in other cases; i.e., he has similar standing and credentials.  And in the Saunders case cited earlier, Judge Duffy found that an appropriate hourly rate for Mr. Bell, lead counsel in the case, was $600 per hour.  My opinion in this case is that valuing Mr. Jackson's time at $600 per hour is fair and reasonable.... Under the circumstances, I conclude the fee sought clearly falls within the range of fees customarily charged in complex class action cases such as this one."

(ECF No. 308-2 at ¶¶ 22-23.)

45.      The record shows that Class Counsel has devoted an estimated three thousand, two hundred sixty (3,260) hours of attorney time in this case.   The common fund fee requested, combined with Defendants' attorney's fee contribution, works out to be at the lower end of the range

testified to by Prof. Freeman for complex litigation of this sort, with no enhancement for risk. This fee also reflects an hourly rate that is less than the actual market rate of $700.00 per hour for Class Counsel noted in his prior Declaration (ECF No. 308-2) as the amount he has charged and received in the past for complex hourly work.

46.     Given the extreme difficulty of this case, the time expended, the nine-year duration through to a full adjudication on the merits, and the outstanding result, Class Counsel's fee request is reasonable   The lodestar analysis reflects that the value of the work put in by Class Counsel on this case exceeds the fee sought under every measure.

47.     In summary, the court finds that Class Counsel's request for fees is unopposed by Defendants, is supported by the *Barber* factors, is well-supported by a lodestar cross-check, and is comparable to fee awards in other class cases given the complexity of the litigation, the duration, and the risks undertaken.  Accordingly, this court finds and concludes that Class Counsel's request for an award of attorney's fees of 39.57%  from the Subclass recovery is fair and reasonable given the results, risks, difficulty, complexity and magnitude of the litigation, and the highly specialized expertise, time and substantial resources required to prosecute it successfully.

## II.     LITIGATION COSTS AND EXPENSES.

48.     Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine.  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Strang v. JHM Mortg. Secs. Ltd. P'ship*, 890 F. Supp 499, 503 (E.D. Va. 1995).

49.     Class Counsel has incurred, or will incur, or is obligated to pay $12,924.15 in expenses related to this case.  Because these expenses were incurred with no guarantee of recovery, Class Counsel had a strong incentive to keep them to a reasonable level.  Class Counsel has provided

the court with a summary of the costs and expenses advanced, and these costs and expenses appear reasonable.

50.    The court finds that the $12,924.15 in litigation costs and expenses incurred by Class Counsel have been adequately documented and were reasonably incurred for the benefit of the Class. The court finds that reimbursement of costs and expenses in this amount from the class recovery is reasonable and justified.

## III.    NAMED PLAINTIFF INCENTIVE AWARDS.

51.    The intent of "incentive awards" (also known as "case contribution payments") is to reimburse and compensate the Named Plaintiffs and/or Class Representatives for their time and efforts expended on behalf of the Class.  Plaintiffs have requested that the court approve an incentive award of $15,000.00 to Subclass Representative Robert P. Taylor, Jr.

52.    A substantial incentive award is appropriate in this complex ERISA case given the benefits accruing to the entire class in part resulting from Mr. Taylor's efforts.  *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 n.9 (D.D.C. Nov. 18, 2013) ("The whole plaintiff class benefitted from the lawsuit to which Mr. Kifafi significantly contributed and thus the whole class should share in contributing to the incentive award.").

53.    The amount requested is in line with amounts that have been approved by courts in other cases. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 U.S. Dist. LEXIS 569, at *23 (E.D. Pa. Jan. 3, 2008) (approving a $30,000 award for each class representative); *McBean v. City of New York*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (stating incentive awards of $25,000-$30,000 are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000); *In re*

*Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005) ($30,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ($50,000); *Hughes v. Microsoft Corp.*, No. C98-1646C, No. C93-0178C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001) ($7,500 to $40,000).  No class member has filed an objection to the incentive award sought.

54.     The record demonstrates significant time and effort expended by Plaintiff, Mr. Taylor, in representing the Subclass.  He was willing, in a small industry, to serve as Subclass Representative.

55.     "Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing."  *Robinson v. Trustee Council of Wateree Cmty. Actions, Inc.*, No. CA: 3:11-CV-00313-CMC, 2012 U.S. Dist. LEXIS 129069, at * 31-32 (D.S.C. Sept. 10, 2012) (*quoting Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D. W. Va. 2010)).

56.     The court finds that the incentive award sought for Subclass Representative Taylor in the amount of $15,000.00 is reasonable and should be approved.

Based upon the foregoing findings of fact and conclusions of law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Class Counsel is hereby awarded attorney's fees in the amount of 39.57% of past benefits and interest paid for the Subclass which amounts to $378,516.33, plus reimbursement of costs and expenses of litigation in the amount of $12,924.15, and Subclass Representative Robert P. Taylor, Jr. is hereby awarded an incentive award in the amount of $15,000.00, all payable from the judgment fund of $956,574.00 and deposited with Class Counsel.  Class Counsel is hereby authorized to make distributions from the

20

fund held in trust for the attorney's fees, reimbursement of costs and expenses, and the incentive award, and to distribute the balance after distributions to class members on a *pro rata* percentage basis, together with a statement showing their net proceeds after deductions for the amounts awarded.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

August 4, 2015
Columbia, South Carolina